THE STATE ex rel. GARNER, Relator, v. MISSOURI & KANSAS TELEPHONE COMPANY.

In Banc, June 1, 1905.

1. **TELEPHONE COMPANIES: Rates: Power of State and Cities.** The State has power to keep telephone corporations in this State within reasonable bounds in respect to charges for their services, and that power the State may delegate to a municipal corporation to be exercised by it within its limits. But the State has not delegated that power, and the city cannot, therefore, enforce a regulation fixing telephone rates.

2. **CITIES: Charters.** A general enactment of the General Assembly granting to cities of a certain class certain powers is the charter of these cities, and whatever is contained therein has the full force of a legislative enactment. And where a charter is framed under the clause of the Constitution authorizing cities of a certain description to frame their own charters, that charter has the force and effect, within the limits contemplated, of a charter granted by an act of the Legislature.

3. ———: ———: **Limitations: Telephone Rates.** The words of the Constitution stating that a city of a certain description "may frame a charter for its own government," mean that it may frame a charter for the government of itself as a city, which includes all that is necessary or incident to the government of a municipality, but not all the power that the State has for the protection of the rights and regulation of the duties of the inhabitants in the city as between themselves. The authority of Kansas City to insert in its freeholders' charter the power to regulate the price to be charged for telephone services within the city is not conferred by this constitutional provision.

4. ———: ———: ———: ———: **Governmental Regulation.** The regulation of prices to be charged by a corporation intrusted with the franchise of a public utility, is not a power appertaining to the government of the city, and does not follow as an incident to a grant of power to frame a charter for the city government. That power is not conferred by the Constitution upon cities authorized to frame their own charters.

5. ———: ———: ———: ———: **Enabling Act.** The "Enabling Act" of 1887 did not confer upon Kansas City the power by its charter or ordinances to regulate the prices to be charged for telephone service. That power is not to be found in its title. Nor in section 50, conferring on the city "exclusive control over its public highways, streets, avenues, alleys and public places." Nor in section 51, authorizing the city to provide by ordinance "for regulating and controlling the exercise by any person or corporation of any public franchise or privilege in any streets or public place in the city, whether such franchises or privileges have been granted by said city, or by or under the State of Missouri, or any other authority." The words "exclusive control," used in section 50, mean exclusive control for the purposes of city government, not to the exclusion of the State in other matters; and section 51 was enacted to give the city power to regulate and control private corporations in their use of the streets.

6. ———: ———: ———: **Constitutional Limitations.** The constitutional provision which requires the charter to be framed by a city of a certain size to be always subject to the Constitution and laws of the State, means that in all matters not appertaining to city government the charter is subordinate to the will of the General Assembly.

Per Marshall, J., in Separate Opinion.

1. **POWERS OF CITIES: Local and General Matters.** The powers of a city are not to be determined by drawing a distinction between matters of local and State concern, and holding that

State ex rel. v. Telephone Co.

as to matters of purely local concern the city has the powers to adopt regulations, and that as to matters which are not properly local but as to which the State has a concern the General Assembly alone has the power of regulation. No fixed, certain, general or intelligible rule can be founded upon such a distinction.

2. ———: Safe Grounds. There is but one safe ground upon which the courts can rest a rule defining the powers of cities: first, it is within the power of the General Assembly to delegate to a municipality a portion of the State's police power, under which it will be competent for the city to adopt such police regulations as affect the citizens in respect to their relations to the municipality, and in their conduct towards each other, but that such police regulations can be enforced only by fine or imprisonment; second, it is competent for the State to confer upon a municipality the right to enact regulations or ordinances that are purely municipal, that is, such as regulate the governmental or business affairs of the city; third, it is not competent for the General Assembly to delegate to a municipality any portion of the legislative power of the State (by which is meant the power to make laws) to confer any civil right of action of one citizen against another.

3. ———: Powers Granted and Reserved. By the constitutional provisions and by the statutes, authorizing a city to frame its charter, nothing more was conferred than a police power and a strictly municipal power. The power to enact laws of civil conduct and to prescribe civil remedies among citizens is expressly reserved to the Legislature, and cannot be delegated by it.

4. ———: ———: Telephone Rates. It is no part of a municipal power to regulate the prices that may be charged for telephone service, any more than it is to regulate the prices that may be charged for any quasi-public service, or for the sale of the necessaries of life. All such matters fall within the domain of legislative powers, and no city can by its freeholders' charter take unto itself such power, nor can the General Assembly delegate such power to a city.

5. TELEPHONE RATES: Power of Legislature. The Legislature may fix reasonable charges for telephone services, but it cannot arbitrarily and oppressively fix charges at such rates as would destroy the business or make it impossible to conduct the business except at a loss. It can also authorize telephone companies to fix such reasonable charges as they see fit, subject to the right of the Legislature, by general law, to reduce the charges to a reasonable basis.

6. ———: Power of Courts: Mandamus. The courts have no power to fix telephone rates. They are limited to determining,

State ex rel. v. Telephone Co.

in a proper case, whether the charges fixed, whether by the company or by the Legislature, are reasonable. But such question cannot be decided in a proceeding by mandamus.

## Mandamus.

WRIT DENIED.

*R. J. Ingraham, O. H. Dean, E. E. Yates, Garland M. Jones* and *James W. Garner* for relator.

(1) Prima facie the ordinance is reasonable and enforceable. The burden is upon respondent, at every point, to establish the proposition that it should not be enforced. Tel. Co. v. Phila., 23 Sup. Ct. Rep. 817; Railroad v. State, 186 U. S. 257. And relator, by having the survey of the assets of respondent made, and by the introduction of the evidence, did not change this rule as to the burden of proof. Bolan v. Co., 127 Mo. 525. (2) Respondent being engaged in a business of a public nature, enjoying by grant from the State the sovereign power of eminent domain, is subject, as to business within the State, to reasonable regulation by the State, unless it has, by proper legal constitutional measures, secured immunity therefrom. Munn v. State, 94 U. S. 113; Railroad v. State, 94 U. S. 155; Peik v. Railroad, 94 U. S. 165; State ex rel. v. Murphy, 145 Mo. 573; Stone v. Loan and Trust Co., 116 U. S. 307; State v. Tel. Co., 61 S. C. 83; Hockett v. State, 105 Ind. 250; Tel. Co. v. Bradbury, 106 Ind. 1; Tel. Co. v. State, 118 Ind. 194; State v. Tel. Co., 17 Neb. 126; Granger Cases, 94 U. S. 179; Ruggles v. State, 108 U. S. 526; Water Works v. Schloter, 110 U. S. 347; Railroad Commission Cases, 116 U. S. 347; Ouachita Packet Co. v. Aiken, 121 U. S. 444; Dow v. Beidelman, 125 U. S. 680; Railroad v. State, 118 U. S. 568; State v. Smith, 128 U. S. 174; Ferry Co. v. State, 114 U. S. 217; Chicago v. State, 134 U. S. 418; Chicago v. Wellman, 143 U. S. 339; Minneapolis v. State, 134 U. S. 467; Budd v. State, 143 U. S. 517; Budd v. State, 117 N. Y. 19; Brass v. Stoesor, 153 U. S. 391;

Reagan v. F. C. T. Co., 154 U. S. 362; St. Louis, etc.,
v. Gill, 156 U. S. 649; Cov. T. Pike v. Sanford, 164
U. S. 578; Smyth v. Ames, 169 U. S. 466; Water Co. v.
Fergus, 180 U. S. 587; State v. Tel. Co., 47 Fed. 636;
Paterson v. State, 97 U. S. 501; State ex rel. v. Asso-
ciated Press, 159 Mo. 410; State ex rel. v. Water
Works, 52 Mo. App. 312; Matthews v. Railroad, 121
Mo. 298; Haugen v. Co., 21 Ore. 418; People v. Rail-
road, 130 Ill. 175; Leavel v. Tel. Co., 116 N. C. 29; State
v. Gas Co., 34 Ohio 572; Zanesville v. Gas Co., 47 Ohio
St. 1; Hudson v. State, 24 N. J. L. 718; Johnson v.
State, 113 Ind. 143; State v. Tel. Co., 36 Ohio St. 296;
Tel. Co. v. Tel. Co., 66 Md. 399; St. Louis v. Tel. Co.,
96 Mo. 623; State v. Tel. Co., 61 S. C. 83. In considering
the question of whether or not it has been released from
the visitorial power of the State, courts have always
construed measures strictly against the corporation.
The State will never be presumed, upon a doubtful con-
struction, to have parted with so important a right.
Stone v. Loan and Trust Co., 116 U. S. 325; Ruggles v.
State, 108 U. S. 526; Railroad v. State, 183 U. S. 503;
Newton v. Com., 100 U. S. 548; State v. Gas Co., 34
Ohio St. 572; Zanesville v. Gas Co., 47 Ohio St. 1; Rail-
road v. Miller, 132 U. S. 75; Matthews v. Railroad, 121
Mo. 324; R. R. Comrs. v. Railroad, 61 Me. 279; Rail-
road v. State, 134 U. S. 454; Covington v. Sanford, 164
U. S. 578.    (3) If the State has not parted with its
rights of regulation as between it and respondent, it
follows that the city has become possessed of this right,
as to local regulation, by transmission from the people
of the State under the Constitution of 1875, and by the
Enabling Act, passed by the Legislature in 1887, and
by the adoption into its charter of the express provis-
ion, relating to regulating telephone rates.   The matter
of telephone rates is one of "local concern." Who
would question the right of the city to regulate hack-
men, street railway fares, wharfage, drayage, or any
similar matter, if it were not limited by some prior con-

tract, or by some lack of power in its charter? Sec. 16, art. 9, Const. Mo. (1875); Laws 1887, pp. 42 to 51; sec. 20, art. 17, charter of Kansas City (1889); sec. 1, art. 3, par. 28, charter (1889). The State has clearly transmitted this power to the city, and the city, therefore, has a clear right to regulate respondent's business. St. Louis v. Bell Tel. Co., 96 Mo. 623. (4) The city, therefore, had the power to pass the ordinance in question. It created a legal right in relator, and places a legal duty upon respondent. The ordinance, supported as it is by express charter power, is of the same force, as to a local matter, as an act of the Legislature would be. The Legislature, since the adoption of the charter by the city, could not legislate on this matter so as to affect Kansas City. Sanders v. Railroad, 147 Mo. 411; Jackson v. Railroad, 157 Mo. 621; Hutchinson v. Railroad, 161 Mo. 246; Weller v. Railroad, 164 Mo. 180; Cox v. Railroad, 74 S. W. 854. (5) Mandamus is a proper remedy. Cumberland L. and T. Co. v. Railroad, 51 La. Ann. 29; R. S. Comrs. v. Railroad, 61 Me. 279; People v. Railroad, 28 Hun 543; Railroad v. Hall, 91 U. S. 343; Ouachita Packet Co. v. Aiken, 121 U. S. 444; State ex rel. v. Railroad, 79 Wis. 262; State ex rel. v. Railroad, 87 Wis. 79; State ex rel. v. Tel. Co., 23 Fed. 540; State ex rel. v. Tel. Co., 47 Fed. 636; State ex rel. v. Railroad, 83 Fed. 284; U. S. v. Railroad, 3 Dill. (U. S.) 524; Water Co. v. Fergus, 178 Ill. 571; State ex rel. v. Joplin Water Works, 52 Mo. App. 317; State v. Tel. Co., 61 S. C. 83; State ex rel. v. St. Louis, 145 Mo. 593; State v. Tel. Co., 17 Neb. 136.

*Rozzelle, Vineyard & Thacher, John C. Tarsney* and *W. M. Williams* for respondent.

(1) Kansas City had no power to enact the ordinance fixing telephone rates. The only claim by relator of power in the city to enact this ordinance is the 28th subdivision of section 1 of article 3 of the city charter.

It is not claimed that the General Assembly ever delegated to the city power to fix the rates of telephone or telegraph companies. It is further contended by relator that the authority of the framers of the city charter to insert this provision authorizing the city to fix the rates of telephone and telegraph companies is derived (a) from the Constitution, (b) from section 51 of the Enabling Act. 1. The grant of power by the Constitution, under which Kansas City adopted its charter, authorizes any city having a population of more than one hundred thousand inhabitants to "frame a charter for its own government," but this includes only the right to provide for matters of "purely local concern," pertaining strictly to municipal government. It does not authorize the city, of its own volition, to take from the General Assembly, and confer upon itself, the sovereign power of the State to fix the charges of telephone and other public service corporations created by the State and empowered by it to make such charges. Tacoma El. L. & G. Co. v. Tacoma, 44 Pac. 655; Kansas City v. Scarritt, 127 Mo. 650; State v. Field, 99 Mo. 356; Badgley v. St. Louis, 149 Mo. 122; State v. McKee, 69 Mo. 506; State v. Finn, 8 Mo. App. 348; State v. Dolan, 93 Mo. 473; Kansas City v. Stegmiller, 151 Mo. 205; Young v. Kansas City, 152 Mo. 662; Ewing v. Hoblitzelle, 85 Mo. 77; State ex rel. v. St. Louis, 145 Mo. 574; Murphy v. Railroad, 153 Mo. 255; St. Louis v. Tel. Co., 96 Mo. 623; St. Louis v. Tel. Co., 149 U. S. 471; State ex rel. v. City of Sheboygan, 111 Wis. 23; Mills v. Chicago, 127 Fed. 731; State ex rel. v. Weir, 67 Pac. 226. 2. The regulation of telephone rates is not a matter of local concern and strictly within the domain of purely municipal government. Respondent was incorporated under and derives its powers from and its duties are prescribed by the statutes of the State relating to the incorporation of telegraph and telephone companies. R. S. 1899, ch. 12, art. 7; St. Louis v. Tel. Co., 96 Mo. 623; State ex rel.

v. St. Louis, 145 Mo. 574. Statutes of Wisconsin, Michigan, Minnesota, New York, New Jersey, Iowa, Kansas and other States, invest telephone companies with the same powers and impose upon them practically the same duties as the Missouri statutes. State ex rel. v. City of Sheboygan, 111 Wis. 23; Tel. Co. v. Benton Harbor, 121 Mich. 512; Tel. Ex. Co. v. Minneapolis, 81 Minn. 140; Duluth v. Tel. Co., 84 Minn. 486; Rochester v. Tel. Co., 64 N. Y. S. 804; Township of Summit v. Tel. Co., 57 N. J. Eq. 123; Chamberlain v. Tel. Co., 93 N. W. 596; Abbott v. Duluth, 104 Fed. 833. Respondent obtained its right to charge toll from the State; and the power to regulate the same is inherent in the State, in its sovereign capacity, and is not vested in Kansas City. State ex rel. v. St. Louis, 145 Mo. 574; State ex rel. v. Murphy, 134 Mo. 573 (not overruled on this point); St. Louis v. Tel. Co., 96 Mo. 623; St. Louis v. Tel. Co., 149 U. S. 471; R. S. 1899, secs. 1247, 1251, 1254, 1256; Tacoma Gas & Elec. L. Co. v. Tacoma, 44 Pac. 655; Africa v. Mayor & Aldermen, 70 Fed. 729; State ex rel. v. Weir, 67 Pac. 226. This power inheres in the State in its sovereign capacity, and can only be conferred upon municipal corporations by express delegation from the State Legislature. In re Pryor, 55 Kan. 724; Tacoma Gas & Elec. L. Co. v. Tacoma, 44 Pac. 655; Africa v. Mayor & Aldermen, 70 Fed. 729; State ex rel. v. City of Sheboygan, 86 N. W. 657; Noblesville v. Gas Co., 157 Ind. 162; Gas Co. v. State, 135 Ind. 49 (overruling Rushville v. Gas Co., 132 Ind. 575); Tel. Co. v. City of Benton Harbor, 121 Mich. 512. The charter of respondent received from the State granted it the power to "construct, own, operate and maintain lines of telephone between such points as it might from time to time determine, and to make such reasonable charges for the use of same as it might establish." To change this will require an amendment of the law constituting respondent's charter, which can only be done by the General Assembly. In re Pryor, 55 Kan. 724;

2 Tiedeman on State Control of Person and Property, 980; Central Trust Co. v. Railroad, 82 Fed. 1. 3. Section 51 of the Enabling Act does not confer any such power. It is simply a street regulation and does not carry, either expressly or by implication, power to regulate the dealings between a corporation having the use of the streets and its individual patrons. State ex rel. v. St. Louis, 145 Mo. 551; State ex rel. v. Murphy, 134 Mo. 573 (overruled, but not on this point); St. Louis v. Tel. Co., 96 Mo. 629; In re Pryor, 55 Kan. 724; Noblesville v. Gas Co., 157 Ind. 162; St. Louis v. Tel. Co., 149 U. S. 471; State ex rel. v. City of Sheboygan, 86 N. W. 657; Mills v. Chicago, 127 Fed. 731. (2) A municipal penal ordinance not of a contractual nature cannot create a civil duty enforceable in a common law action by one citizen against another. 1. Difference between a statute and an ordinance in this respect. St. Louis v. Knox, 74 Mo. 79; Kansas City v. Clark, 68 Mo. 588; Ex parte Hollwedell, 74 Mo. 395; Moran v. Car Co., 134 Mo. 650; Saunders v. Railroad, 147 Mo. 411; Byington v. St. Louis, 147 Mo. 673; Choquette v. Railroad, 152 Mo. 257; Murphy v. Railroad, 153 Mo. 252; Holwerson v. Railroad, 157 Mo. 216; Railroad v. Ervin, 89 Pa. St. 71. 2. The Kansas City charter prescribes the mode of enforcing penal ordinances, and that mode is exclusive. Charter, art. 3, sec. 1, par. 32; art 4, sec. 17; art. 17, sec. 9; 1 Dillon on Mun. Corp., secs. 339, 336; Tiedeman on Mun. Corp., sec. 156; Horr & Bemis on Mun. Police Ord., sec. 148; Beach on Pub. Corp., sec. 524; Boon on the Law of Corporations, sec. 282; 17 Am. and Eng. Ency. Law (1 Ed.), 260; 15 Ency Plead. and Prac., 410; 7 Lawson's Rights, Remedies and Practice, sec. 3696; 4 Wait's Actions and Defenses, 612; Coonley v. Albany, 132 N. Y. 153; State v. Zeigler, 32 N. J. L. 268; Lansing v. Railroad, 85 Ia. 215; Bolton v. Vellines, 94 Va. 393; Santa Cruz v. Railroad, 56 Cal. 149; Carroll v. Campbell, 110 Mo. 567; People ex rel. v. Swift, 66 Ill. App. 605. 3. It is only because ordinances of this class can-

not be enforced, except by the imposition of a penalty, that it has been universally held that such an ordinance without a penalty is inoperative and void. Ulrich v. St. Louis, 112 Mo. 142; Town of Tipton v. Norman, 72 Mo. 385; Tomlin v. City of Cape May, 44 Atl. 209; Village of Winooski v. Gokey, 49 Vt. 282; Messenger v. Millville, 63 N. J. L. 123; Smith v. Gouldy, 58 N. J. L. 564; Tiedeman on Mun. Corp., sec. 154; Horr & Bemis on Mun. Police Ord., sec. 77; Beach on Pub. Corp., sec. 522; Boon on the Law of Corporations, sec. 282; Dillon on Mun. Corp. (4 Ed.), secs. 336, 338. (3) (a) The city can only exercise such powers as are granted in express words or necessarily implied. City v. Eddy, 123 Mo. 546; St. Louis v. Tel. Co., 96 Mo. 623; Knapp v. Kansas City, 48 Mo. App. 485. (b) The city could not by ordinance restrict or enlarge or in any way change or modify the manner provided in the city charter for enforcing ordinances. Coonley v. Albany, 132 N. Y. 153; State v. Zeigler, 32 N. J. L. 368; Lansing v. Railroad, 85 Ia. 215; Phillips v. Allen, 41 Pa. St. 41; People ex rel. v. Swift, 66 Ill. App. 605; Badgely v. St. Louis, 149 Mo. 122; Hart v. Mayer, etc., 9 Wend. 571. (4) The ordinance does not prescribe any penalty for refusing to furnish telephone service.

*R. J. Ingraham, O. H. Dean, E. E. Yates, Garland M. Jones* and *James W. Garner* for relator in reply.

(1) The power to fix tolls is no more a "sovereign power" than is the power of "eminent domain;" yet, in Kansas City v. Marsh Oil Co., 140 Mo. 465, it was held that Kansas City could, in her charter, take over to herself this attribute of sovereignty. The same is true as to taxation. U. S. v. New Orleans, 98 U. S. 392; City v. Bank, 49 Mo. 577. Charter provisions for regulating hack hire, etc. (even as to corporations created by the State), and which consequently get the right to charge tolls from the State, have been enforced with-

out question. Is there something "sacred" about the rights of telephone companies, so that they cannot be regulated by municipalities, as are other business corporations created by the State? Suppose the charter of Kansas City, with its express provisions as to right to fix telephone charges, had been made by an act of the Legislature, could there be any doubt about the city's right to fix telephone rates? Is it of less force because made by the people, under the Constitution? Sanders Case, 147 Mo. 427. (2) Kansas City had the power to adopt the ordinance of September 10, 1902, whereby it fixed the maximum telephone rates, strictly within the limits of Kansas City, Missouri, because: (a) Its charter contained the following provision: Sec. 1, art. 3, par. 28: The city shall have power to regulate the prices to be charged by telephone, telegraph, gas and electric light companies. (b) The Legislature, by the Enabling Act of 1887, transmitted the power of the State to regulate such matters to Kansas City. (c) Kansas City had the right, under section 16, article 9 of the Constitution of 1875, to frame a charter for her own local government, and the only limitation upon that right was, that it should be in harmony and consistent with the Constitution and laws of the State. Kansas City v. Marsh Oil Co., 140 Mo. 465; Kansas City v. Ward, 134 Mo. 172; St. Louis v. Doerr, 145 Mo. 466; Sanders v. Railroad, 147 Mo. 426; Kansas City ex rel. v. Scarritt, 127 Mo. 642; State v. Denny, 118 Ind. 382; State v. Moores, 55 Neb. 480; People v. Lynch, 51 Cal. 15; People v. Detroit, 28 Mich. 228; People v. Chicago, 51 Ill. 17; People v. Hulbert, 24 Mich. 44; State v. Newark, 40 N. J. L. 550; St. Louis v. Fisher, 167 Mo. 660; St. Louis v. Tel. Co., 149 U. S. 467; Owen v. Baer, 154 Mo. 512; Waterworks v. Carterville, 153 Mo. 133; Kansas City v. Stegmiller, 151 Mo. 189. The charter provision in question is in perfect harmony with the Constitution and laws of the State. (d) The State had the right to transmit to Kansas City the power of local

regulation within Kansas City, which power was transmitted by the Enabling Act of 1887. State ex rel. v. Tel. Co., 96 Mo. 632. (e) The regulation of a telephone system, strictly within the limits of a city of Kansas City's class, is of such nature that Kansas City had the right, under section 16, article 9, of the Constitution, to take over to herself that power in her charter. Its indirect effect upon State matters cannot take away this right. State v. Denny, 118 Ind. 382; Kansas City v. Marsh Oil Co., 140 Mo. 465; St. Louis v. Fisher, 167 Mo. 660; Sanders v. Railroad, 147 Mo. 426; St. Louis v. Tel. Co., 149 U. S. 467. It is like the State's right to control its purely internal affairs against interference by the Federal Government. Stone v. L. and T. Co., 116 U. S. 334; Tel. Co. v. Phila., 190 U. S. 160; Railroad v. State, 183 U. S. 503; Ouachita v. Aiken, 121 U. S. 444. (f) But, even if it be of such a nature that the State has some rights of control over it, then such right of the State was transmitted by the Enabling Act of 1887. Laws 1887, pp. 41 to 52; R. S. 1889, secs. 1840 to 1892; State v. Tel. Co., 96 Mo. 623. (g) The Legislature could not have meant, as contended by respondent, by this Enabling Act, to only clothe Kansas City with control over her streets, because: First, it had already done that by the immediately preceding section. Second. It did not, in framing this section, content itself with the use of the broad and comprehensive word "regulate," but immediately added the stronger word "control." 12 Am. and Eng. Ency. Law, 389; Canal Co. v. Bright, 8 Col. 147; Ames v. Railroad, 64 Fed. 178. As to the broad and comprehensive meaning of the words, "regulate, control and exercise," when used with reference to a public franchise: State ex rel. v. St. Louis, 145 Mo. 571; Gibbons v. Ogden, 9 Wheat. 196; Packing Co. v. Chicago, 88 Ill. 225; Town of Mount Carmel v. Wabash County, 50 Ill. 69; City v. West, 29 N. Y. (App. Div.) 130; Cronin v. People, 82 N. Y. 318; Ferry Co. v. State, 114 U. S. 203; Prewitt v. Railroad, 134 Mo.

615. (3) The ordinance had the same force and effect, and was of equal dignity with, an act of the Legislature, because Kansas City had, by virtue of the power given her by the people of the State in the organic law of the State, and by the statutory transmission from the Legislature, the power to make provision for such matter in her charter. Sec. 16, art. 9, Constitution; Enabling Act, pp. 42 to 51; Sanders v. Railroad, 147 Mo. 426; Kansas City v. Marsh Oil Co., 140 Mo. 458; State v. Fisher, 52 Mo. 513; Union Depot Co. v. Railroad, 105 Mo. 562; Jackson v. Railroad, 118 Mo. 199; Keating v. Kansas City, 84 Mo. 415. (4) Said ordinance alone created respondent's duty to furnish local telephone service at the price fixed by the ordinance. (a) A penalty clause is only essential in order to enforce it as a penal ordinance. City of Utica v. Tel. Co., 48 N. Y. Supp. 921. City ordinances, appropriating money and directing (without penalty) the drafting and payment of warrants therefor may be enforced by mandamus. (b) The remedy by penalty is not the exclusive remedy for redress by third parties. Mandamus, or other appropriate remedies, may be invoked. Especially where, as in this ordinance, the penalty is declared to be "not exclusive." State v. Tel. Co., 61 S. C. 83; State v. Tel. Co., 118 Ind. 194; Cumberland, etc., v. Railroad, 51 La. Ann. 29. (5) The express and implied obligation created by the Act of 1879, under which respondent claims all its rights, and by reason of the fact that it is possessed of requisite facilities to comply with relator's demand, and was, at the time of same, furnishing that kind of service, alone and independent of the mandate in section 4 of the regulating ordinance, make it the duty of respondent to comply with relator's demand, under the principles of the common law. State ex rel. v. Tel. Co., 36 Ohio St. 309; Railroad v. People, 56 Ill. 365; 7 Am. and Eng. Ency. Law (2 Ed.), 660; Hangen v. Light Co., 14 L. R. A. 424; Cumberland, etc., v. Railroad, 51 La. Ann. 29; State ex rel. v. Tel. Co., 93 Mo.

App. 349; Tel. Co. v. Bradbury, 106 Ind. 1; State v. Tel. Co., 118 Ind. 194; State v. Tel. Co., 123 Ind. 113; R. R. Comrs. v. Railroad, 63 Me. 278; State v. Tel. Co., 61 S. C. 83; Wheeler v. Northern Col. I. Co., 10 Col. 582; Webster Telephone Case, 17 Neb. 126; Tel. Co. v. Tel. Co., 66 Md. 399; Wiliams v. Gas Co., 52 Mich. 499. (6) The Act of 1879, containing, as it did, the provision that rates should be reasonable, did not give to respondent freedom and immunity from control, either as to its rates or its methods of doing the public business. Wheeler v. Norton Col. I. Co., 10 Col. 582. The legislative intent to shear itself of sovereign attributes, even if it can do so at all, must be very clear before it will be so construed. If there is a doubt, it must be resolved against the parties seeking such dangerous exemptions. Stone v. L. and T. Co., 116 U. S. 325; Railroad v. State, 134 U. S. 455. It is beyond the power of the Legislature to tie the hands of future Legislatures, as to the full and complete exercise of the police powers of the State. Sec. 5, art. 12, of the Constitution; Matthews v. Railroad, 121 Mo. 298; State ex rel. v. St. Louis, 145 Mo. 573. Moreover, it was not within the power of the Legislature to take away from Kansas City the constitutional right of local self-government, or any part of it. Kansas City v. Marsh Oil Co., 140 Mo. 465; State v. Denny, 118 Ind. 382; State v. Moores, 55 Neb. 480. (7) The regulation of respondent's charges is not an amendment of its charter; it is not a change of its powers or rights; it is only the exercise, by an arm of the State, of its rights as fixed by the statute and Constitution, and the principles of the common law. Every charter has these principles in it as clearly as though they were written therein. Mathews v. Railroad, 121 Mo. 298; Peters v. Railroad, 23 Mo. 107.

VALLIANT, J.—This is an original proceeding in this court to obtain a writ of mandamus.

Respondent is.a telephone company, incorporated under the laws of this State, engaged in furnishing telephone service in Kansas City and adjacent territory. It was incorporated in 1882 under article 5, chapter 21, Revised Statutes 1879 (now art. 6, chapter 12, R. S. 1899), and has ever since the date of its incorporation owned and operated a system of telephones in Kansas City . In September, 1902, Kansas. City adopted an ordinance fixing the maximum rate to be charged by telephone companies for their service in that city. The relator requested the respondent to furnish him a telephone and telephone service in his office at the maximum rate fixed by the ordinance, which he tendered, but the respondent refused to furnish it at that rate, whereupon relator instituted this suit to compel respondent to do so. Respondent in its return pleads several defenses, the one of which is of first importance is that the city had no authority to enact the ordinance. If respondent is correct in that proposition, there will be no necessity for looking into the other defenses pleaded.

Prior to the adoption of what is called the "Freeholders' Charter," which was in 1889, Kansas City had a special charter, first granted in 1853, and afterwards several times amended, but there was nothing in it authorizing the city to regulate telephone companies or fix the rates to be charged for telephone service.

Section 16, article 9, of our Constitution adopted in 1875 ordains: "Any city having a population of more than one hundred thousand inhabitants may form a charter for its own government, consistent with and subject to the Constitution and laws of this State," etc.

In 1887 (Laws 1887, p. 42) the General Assembly passed an act, which in the briefs is called an "Enabling Act," the object of which was to provide the means for cities to avail themselves of that constitu-

tional privilege and form their own charters. In that act were the following two sections:

"Sec. 50. Such city shall have exclusive control over its public highways, streets, avenues, alleys and public places, and shall have exclusive power, by ordinance, to vacate or abandon any public highway, street, avenue, alley or public place, or part thereof, any law of this State to the contrary notwithstanding.

"Sec. 51. It shall be lawful for any such city in such charter or by amendment thereof, to provide for regulating and controlling the exercise by any person or corporation of any public franchise or privilege in any of the streets or public places of such city, whether such franchises or privileges have been granted by said city or by or under the State of Missouri, or any other authority."

Those are now sections 6408 and 6409, Revised Statutes 1899.

Under that act, and by virtue of section 16, article 9, of our Constitution, above quoted, Kansas City adopted its present charter in 1889, and in that charter the two sections of the Enabling Act above quoted are literally adopted. The respondent telephone company had already been planted in the city and doing business there several years before the charter was adopted.

In section 1, article 3, of the charter, it is provided that the city shall have power by ordinance: " . . . to regulate the prices to be charged by telephone, telegraph, gas and electric light companies, and to compel them and all persons and corporations using, controlling or managing electric wires for any purpose whatever to put and keep their wires under ground and to regulate the manner of doing the same."

There was also in the charter what is called the "General Welfare" clause, which authorized the city to pass any ordinance that "may be expedient in maintaining the peace, order, good government, health and welfare of the city, its trade, commerce and manufac-

tures, or that may be necessary and proper for carrying into effect the provisions of this charter.''

If the city had power to enact the ordinance fixing the maximum rate for telephone service in question it it to be found in that clause of the Constitution, those sections of the statute and those charter provisions above quoted. In so far as the ordinance depends upon the charter there is no doubt of the authority; the charter expressly authorizes it. But whether the provision of the charter is backed by lawful authority, is the serious question in the case.

It is not questioned that the State has power to keep telephone corporations in this State within reasonable bounds in respect of charges for their service, nor can it be questioned that the State may delegate that power to be exercised by a municipal corporation within its limits, but the question is, has the State delegated that authority to this city?

Until the adoption of our Constitution in 1875 all cities in the State derived their charter powers from the General Assembly, and therefore whatever was contained in a city charter had the full force of a legislative enactment. But under that Constitution cities of certain descriptions were authorized to frame their own charters. A charter framed under that clause of the Constitution within the limits therein contemplated has the force and effect equal to one granted by an act of the Legislature.

But it is not every power that may be essayed to be conferred on the city by such a charter that is of the same force and effect as if it were conferred by an act of the General Assembly, because the Constitution does not confer on the city the right, in framing its charter, to assume all the powers that the State may exercise within the city limits, but only powers incident to its municipality, yet the Legislature may, if it should see fit, confer on the city powers not necessary or incident to the city government. There are

governmental powers the just exercise of which is essential to the happiness and well being of the people of a particular city, yet which are not of a character essentially appertaining to the city government. Such powers the State may reserve to to be exercised by itself, or it may delegate them to the city, but until so delegated they are reserved. The words in the Constitution, "may frame a charter for its own government," mean may frame a charter for the government of itself as a city, including all that is necessary or incident to the government of the municipality, but not all the power that the State has for the protection of the rights and regulation of the duties of the inhabitants in the city, as between themselves. Nor does the Constitution confer unlimited power on the city to regulate by its charter all matters that are strictly local, for there are many matters local to the city, requiring governmental regulation, which are foreign to the scope of municipal government. In none of the cases that have been before this court bringing into question the charters of St. Louis and Kansas City under the Constitution of 1875, have we given to this constitutional provision any broader meaning than above indicated. [St. Louis v. Bell Tel. Co., 96 Mo. 623; State ex rel. v. Field, 99 Mo. 353; Kansas City ex rel. v. Scarritt, 127 Mo. 646; State ex rel. Subway Co. v. St. Louis, 145 Mo. 574; Kansas City v. Stegmiller, 151 Mo. 189; Young v. Kansas City, 152 Mo. 661.]

The regulation of prices to be charged by a corporation intrusted with a franchise of a public utility character is within the sovereign power of the State that grants the franchise or that suffers it to be exercised within its borders, and that power may be with wisdom and propriety conferred on a municipal corporation, but it is not a power appertaining to the government of the city and does not follow as an incident to a grant of power to frame a charter for a city government. The authority of Kansas City to insert in its

charter the power to regulate the price to be charged for telephone service within the city is not conferred by the constitutional provision above quoted.

Is it conferred by what is called the "Enabling Act" of 1887?

The purpose of that act was to enable cities of the class named to avail themselves of that constitutional provision. It is entitled, "An act providing that any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government, and regulating the same." There is nothing, therefore, in the title that indicates an intention to confer on such cities any power except that conferred by the Constitution. In its grant of power it so closely copies the language of the Constitution that its meaning to keep within the lines there drawn is obvious. There is nothing in the whole act of 54 sections that purports to confer on the city any powers except those appertaining essentially to the government of the city, unless as is contended by the relator sections 50 and 51 above quoted confer such powers.

Section 50 confers on the city "exclusive control over its public highways, streets, avenues, alleys and public places," etc., and section 51 authorizes the city to provide in its charter "for regulating and controlling the exercise by any person or corporation of any public franchise or privilege in any of the streets or public places of such city, whether such franchises or privileges have geen granted by said city, or by or under the State of Missouri, or any other authority."

The exclusive control of its streets as granted in section 50 is an attribute of municipal authority and could have been adopted in the charter under the authority of the Constitution without the express sanction of the General Assembly. The word "exclusive," however, in that connection is not to be given its unlimited meaning, but must be understood as subject to the control of the State whenever the State chooses

to assume control. The constitutional grant of power under which the charter is formed says that it must always be subject to the Constitution and laws of the State, which we interpret to mean that in all matters not appertaining to city government the charter is subordinate to the will of the General Assembly. The Legislature, in conferring on the city the exclusive control of its streets, meant exclusive control for the purposes of the city government, not to the exclusion of the State in other matters. The General Assembly, except as limited in the Constitution, has jurisdiction to grant franchises to be exercised in the streets of the cities and other public highways in the State and that jurisdiction has not been surrendered either to cities with charters under the Constitution or to other municipalities.

In adopting these two sections 50 and 51, of the so-called Enabling Act, the Legislature had in view the necessity of power in the city to control its streets and other public places, and the power in the State to grant franchises to be exercised by the grantee in the streets and other public places of the city, and it was not difficult to foresee that a clash might occur between the city in its exclusive control of the street and the private corporation in the exercise of the franchise granted by the State. Therefore, after granting to the city, as it did in section 50, control of its streets, the thought occurred to the lawmakers that there were private corporations organized and to be organized under the laws of this State with express authority to use the streets and other public highways in the exercise of their franchises, and in order to prevent any clash that might occur between the city in its control of the streets and the private corporation in its use of the same, section 51 was added which gave the city power to regulate and control the private corporation in its use of the street. Under that power the city may regulate the planting of poles, wires, etc., or require the wires to

be put under ground, or do any thing within reason to render the use of the street by the private corporation as little of injury to the public as may be. But the section does not confer on the city the power to regulate the prices to be charged by the telephone company for its service to the inhabitants of the city.

The peremptory writ is denied. *Robinson, C. J., Gantt, Burgess,* and *Fox, JJ.,* concur; *Brace, J.,* dissents; *Marshall, J., dubitante.*

### ON REHEARING.

PER CURIAM: On a rehearing, the foregoing opinion by *Valliant, J.,* is adopted as the opinion of the Court in Banc. *Gantt, Fox, Burgess* and *Valliant, JJ.,* concur; *Marshall, J.,* concurs in the result for reasons given in his separate opinion; *Lamm, J., dubitante; Brace, C. J.,* dissents.

### SEPARATE OPINION.

MARSHALL, J.—I concur in the result announced in this case. But as I do not fully agree with the position or contention of counsel on either side of the case, or with all that is said in the opinion rendered herein, I deem it proper to briefly express my reasons for so doing.

It is not my purpose, at this time, to discuss, at length, the many and important legal and constitutional questions that have been so ably argued by counsel in this case. The argument has taken a very wide range, and has covered many points, concerning which this court has not, heretofore, been able to agree or to formulate any fixed, general rules which could solve all the cases that have arisen or that may hereafter arise.

In brief, the relator contends that Kansas City has express power, under her charter, to regulate and fix the prices that may be charged for telephone service within the corporate limits of the city; that if such is

not the case, then the Enabling Act has conferred that power upon the city; that under section 16 of article 9 of the Constitution, Kansas City was authorized to adopt a charter which would regulate all matters of mere local concern as distinguished from matters of State concern, and that the General Assembly of the State has no power, even by a general law, to change such local regulations so adopted by the city; that even as to matters which are not properly local but as to which the State has a concern, Kansas City has the power, under its charter, to adopt regulations or enact laws that will be legal and binding, as to all subjects upon which the General Assembly of the State has not spoken, but that thereafter, the General Assembly has power, by general laws, to change such regulations.

It is not necessary, herein, to state the various contentions of the defendant.

I think that it is extremely unfortunate that this court ever attempted to solve the problem by drawing a distinction between matters of mere local concern and matters of State concern, and to say that as to matters of mere local concern the municipality has power to legislate.  To my mind no fixed, certain, general or intelligible rule can be formulated upon such a distinction, which will answer or solve the questions that will arise.  There are many matters which are, in a sense, local, but in which the State, at large, has also a direct interest.  So that the attempted distinction would necessarily fail when applied to such matters.  I think experience has now conclusively shown the necessity for this court to adopt some rule of construction which will solve all such questions.  I am firmly convinced that there is but one safe ground upon which the courts can rest the rule, and that is to hold, first, that it is within the power of the General Assembly to delegate to a municipality a portion of the State's police power, under which it will be competent for the city to enact police regulations, that is, such regulations as affect the

citizens in respect to their relations to the municipality, and in their conduct towards each other, but that such police regulations can only be enforced by fine or imprisonment; second, that it is competent for the State to confer upon a municipality the right to enact regulations, laws, or ordinances that are purely *municipal,* that is, such as regulate the governmental or business affairs of the city, and of the citizens in their conduct towards the city, or such as regulate the conduct of municipal officers, and the like; third, that, under the Constitution of this State, and the decisions of this court, it is not competent for the Legislature to delegate to a municipality any portion of the legislative power of the State, by which I mean, the power to make laws, to confer civil rights, to create civil liabilities, to provide civil remedies, to punish by civil action any acts of commission, or omission of duty, or to create any civil right of action between citizens *inter sese.*

I am thoroughly persuaded that it never was within the contemplation of the framers of our system of government, or of our Constitution, that any city, whether organized under the general laws of this State, or under the provisions of the Constitution which allow cities to frame their own charter, to confer upon cities anything more than a *police* power, and a *strictly municipal power.* And that the power to enact all laws of civil conduct, and to prescribe all civil remedies among citizens, in short, to enact laws as distinguished from municipal regulations, is expressly reserved to the Legislature of this State, and cannot be delegated by it.

In my judgment the whole subject would be simplified, and a plain rule of interpretation afforded, by adopting such a distinction between the powers of a city and the powers of the General Assembly of the State.

I, therefore, have reached the conclusion that it is no part of a municipal power to regulate the prices

that may be charged for telephone service, any more than it is to regulate the prices that may be charged for any quasi-public service, or for the sale of the necessaries of life. All such matters fall within the domain of legislative powers. Hence, I therefore think that Kansas City could not, by its charter, take unto itself the power claimed in this case, and that it was incompetent for the General Assembly to delegate such power to Kansas City. At first I was of opinion that, as the defendant is organized under article 6 of chapter 12 of the Revised Statutes 1899, and as that article conferred upon the defendant the right to do telephone business, "and to make such reasonable charges for use of the same as they may establish," it was within the power of the court to determine whether the charges established by the defendant were, or were not, reasonable, and that the question could be determined in a proceeding by mandamus. It is argued, however, that the power to fix such charges is a legislative power, which can only be exercised by the General Assembly, and that the court has no power to fix the same.

Upon further reflection I have come to the conclusion that the true construction of the provisions of the article quoted is, that the defendant may fix such reasonable charges as it sees fit, subject, however, to the right of the General Assembly, by general law, to fix such reasonable charges, and that the power of the court is limited to determining, in a proper case, whether the charges fixed, either by the company, or by the Legislature, are reasonable charges, and that such question cannot be decided in a proceeding by mandamus. I believe that the statute does not confer upon the defendant an absolute right to determine what shall be a reasonable charge, and I also believe that even the Legislature cannot arbitrarily and oppressively fix a charge that will amount to a deprivation of the privileges and franchises conferred by law upon the defendant company. The Gen-

Sluder v. Transit Co.

eral Assembly, it is true, might repeal the whole act in relation to telephone companies, and leave the subject without legislative regulation, but as long as the Legislature permits a company to engage in such business it is beyond the power of the Legislature to fix the charges it may make at a sum which would be destructive to its business. The power to regulate does not mean the power to destroy. Under the guise of regulation, it is incompetent for the Legislature to destroy franchises which are authorized by law, or to so lay down the manner of transacting a legitimate business as to make it impossible to conduct such business except at a loss.

I shall not attempt, now, to indicate in what manner or form of proceeding the right of the court to construe or determine the reasonableness of the charge, whether established by the defendant or by legislative act, can or must arise. I shall content myself, now, with saying that I don't think the question can be properly raised in a proceeding by mandamus.

The foregoing sufficiently indicates my reason for concurring in the result, only, in this case.