[Civil No. 4540.   Filed March 15, 1943.]

[135 Pac. (2d) 223.]

CITY OF TUCSON, a Municipal Corporation; HENRY O. JAASTAD, Mayor of Said City; J. O. NIEMANN, WILLIAM H. CODD, W. S. NICHOLAS, FRED D. LEE, HALBERT W. MILLER and HOMER L. SHANTZ, JR., Members of the Council of Said City; JOE CONWAY, Attorney General of the State of Arizona, Appellants and Cross-Appellees, v. MILO W. WALKER, DAVID I. PUTNEY, JOSEPH E. RICE, on Behalf of Themselves and all Other Taxpayers of the City of Tucson, Appellees and Cross-Appellants.

Mr. John D. Lyons, Jr., City Attorney, and Mr. Beverly B. Williamson, Assistant City Attorney, for Appellants and Cross-Appellees City of Tucson, Mayor and Councilman.

Mr. Joe Conway, Attorney General, and Mr. Edward P. Cline, Assistant Attorney General, for Appellant and Cross-Appellee, Joe Conway, as Attorney General.

Mr. William F. Kimball, for Appellees and Cross-Appellants Milo W. Walker, et al.

STANFORD, J.—Plaintiff brings this action on four grounds asking that the court below adjudge and declare Ordinance No. 691, of the defendant City of Tucson, void, invalid and unconstitutional in so far as it provides:

(1) For death benefits payable in part by the City.

(2) For joint survivorship annuities payable in part by said City.

(3) For the investment of the pension fund created under said Ordinance in the purchase of the annuities and other benefits therein provided.

(4) For a pension fund for members of the Police Department of the City of Tucson in lieu of the Police Pension Act of 1937, Laws 1937, c. 40, enacted by our legislature.

The defendant City of Tucson is a municipal corporation duly organized and existing under its Charter and the laws of the State of Arizona, specifically Article 13, Sections 1, 2 and 3 of the Constitution of the State. That said Charter has been in full force and effect since 1929. That Chapter XXIII of said Charter provides:

## "PENSION FUND

"The Mayor and Council shall, within one (1) year after the creation of the Civil Service Commission, establish a fund or funds for the pensioning of persons in the classified service of the City; may retain a reasonable amount from the monthly salary of, and may make necessary regulations for contributions to the pension fund by, such persons; may receive gifts, devises, bequests of money or property for the benefit of such fund or funds, may make contribution of public moneys thereto on such terms and conditions as it may see fit; and shall make rules and regulations for the management, investment and administration of such fund or funds.''

That for the purpose of complying with the above quoted Chapter XXIII of the Charter of the City of Tucson, the Mayor and Council of said City did, on July 18, 1932, duly pass and adopt Ordinance No. 691 of the Ordinances of the City of Tucson. The Ordinance is lengthy and apparently covers the field of pensions very fully to the extent of setting forth how payments are to be made; for the insurance of employees; for retirement annuities; for death and total permanent disability benefits; and, indeed, for a great many other things.

That on the 21st day of July, 1941, the Mayor and Council of the defendant City of Tucson did, by Ordinance duly passed and adopted, repeal said Ordinance No. 691 in so far as it applied to employees of the Police Department of the City of Tucson, and did thereupon adopt for the City of Tucson the Police Pension Act of 1937 of the State of Arizona, and the said City of Tucson continued to operate under the Police Pension Act of 1937 for its policemen until October 6, 1941, when it adopted a new Ordinance which revoked its action in adopting the Police Pension Act of 1937 of the state, and reinstated Ordinance No. 691 as its pension plan for its policemen.

Section 16–1803, Arizona Code Annotated 1939, is as follows:

*"Police pension fund.*—In each city of the state having a population, according to the last federal census, of not less than twenty thousand (20,000) inhabitants, there is hereby created, and in any incorporated city or town having a population of less than twenty thousand (20,000) inhabitants there may be created by ordinance, a Police Pension Fund, which shall be managed, controlled and distributed in accordance with the provisions of this act.''

Under the agreed statements of facts and briefs submitted, the trial court below held:

(1) That Ordinance No. 691 of the Ordinances of the Mayor and Council of the City of Tucson, was void and invalid in so far as it provides for a pension fund for members of the Police Department of the City of Tucson in lieu of the Police Pension Act of 1937, and in its decision of April 30, 1942, the court purposely did not rule on the other three points raised by the plaintiff below for the reason that the court believed its decision on that one point negatived the necessity of deciding the three other points raised, but counsel for both sides urged the court to render a declaratory judgment in order that the City of Tucson might be guided in the

future on the other matters, and accordingly the court held in its declaratory judgment:

"2. That those certain provisions of said ordinance which provide for death benefits, payable in part by said City, are in themselves invalid and void.

"3. That the following provisions of said Ordinance are not in themselves invalid or void, to-wit: (a) The provisions for joint survivorship annuities payable in part by said City; (b) The provisions for the investment of the pension fund created by said Ordinance in the purchase of the annuities and other benefits therein provided."

The judgment of the court below now makes it necessary that in this appeal the defendants below appear herein as appellants and cross-appellees, and the plaintiffs below as the appellees and cross-appellants, and all counsel in the cause join in now requesting this Court to make a declaratory judgment on the other three matters just above stated.

The appellants, the City of Tucson and others, appeal herein from the following judgment of the court below:

(1) That since the discarding of its own Ordinance for the pensioning of policemen and the adoption of the state law for that purpose, the City of Tucson now has no right to revert to an Ordinance of its own and must abide by its selection of the State Police Pension Act.

(2) That the pension Ordinance of the City of Tucson may not provide death benefits, payable in part by the city.

Appellant, the City of Tucson, relies on its right to return to its old Ordinance for the giving of pensions to its policemen, claiming that the City is warranted in doing so under the exception of Section 16–1822, Arizona Code Annotated 1939, which reads as follows:

"*Exception.*—This act shall not apply to any city having and maintaining, by charter or ordinance, a

pension or retirement plan for aged or physically disqualified members of the police department."

■ Counsel for appellant ably present the view that the word "having" of Section 16–1803, of the Police Pension Act of 1937, should read like the words "now or hereafter having," but we cannot agree, but hold that our legislature in enacting the Police Pension Act of 1937 was merely being considerate for such city where a complete set-up for pensions was already operating, but the act does not permit a municipality to tear down its system of pensioning, try out the state law and return again to its own local method.

We hold that Tucson is definitely, by its will, committed to the State Police Pension Act of 1937.

Our ruling in this case is in keeping with the case of *Luhrs* v. *City of Phoenix et al.*, 52 Ariz. 438, 83 Pac. (2d) 283. We refer also to the case of *Clayton* v. *State*, 38 Ariz. 135, 297 Pac. 1037.

If the City of Tucson may drop its pension system under its own Ordinance and adopt the State Police Pension Act of 1937 and return to its Ordinance, then, there is nothing in the way, except carrying obligations under its contracts, of the City of Tucson again changing its method of pensioning its policemen and going through this same procedure.

■ On July 21, 1941, the City of Tucson submitted itself to the jurisdiction of the State Police Pension Act of 1937, and we hold that it is bound by its choice. Because of such wording, may a city again and again go back and forth in the matter of selecting a suitable system for pensioning its policemen?

The judgment of the Superior Court is affirmed.

The three points about which counsel have joined in requesting that we render a declaratory judgment are:

(1) May a pension Ordinance of the City of Tucson provide death benefits payable in part by the City?

(2) May a pension Ordinance of said City provide' joint survivorship annuities payable in part by the City?

(3) May a pension Ordinance of the City of Tucson provide for the investment of pension funds in the purchase (as from an insurance company) of annuities and other benefits provided by the Ordinance?

▉▉▉▉ In the case of *State* v. *Missouri & Kansas Telephone Co.*, 189 Mo. 83, 88 S. W. 41, 43, we find the following:

"A charter framed under that clause of the Constitution, within the limits therein contemplated, has a force and effect equal to one granted by an act of the Legislature. But it is not every power that may be essayed to be conferred on the city by such a charter that is of the same force and effect as if it were conferred by an act of the General Assembly, because the Constitution does not confer on the city the right [in framing its charter] to assume all the powers that the state may exercise within the city limits, but only powers incident to its municipality, yet the Legislature may, if it should see fit, confer on the city powers not necessary or incident to the city government. There are governmental powers the just exercise of which is essential to the happiness and well-being of the people of a particular city, yet which are not of a character essentially appertaining to the city government. Such powers the state may reserve to be exercised by itself, or it may delegate them to the city, but until so delegated they are reserved. The words in the Constitution, 'may frame a charter for its own government,' mean, may frame a charter for the government of itself as a city, which includes all that is necessary or incident to the government of the municipality, but not all the power that the state has for the protection of the rights and regulation of the duties of the inhabitants in the city, as between themselves."

In the case of *Axberg et al.* v. *City of Lincoln*, 141 Neb. 55, 2 N. W. (2d) 613, 614, 141 A. L. R. 894, we quote the following:

"The purpose of the home rule charter provision of the Constitution was to render the cities adopting such charter provisions as nearly independent of state legislation as was possible. Under it a city may provide for the exercise of every power connected with the proper and efficient government of the municipality where the legislature has not entered the field. Where the legislature has enacted a law affecting municipal affairs, but which is also of state concern, the law takes precedence over any municipal action taken under the home rule charter. But where the legislative act deals with a strictly local municipal concern, it can have no application to a city which has adopted a home rule charter. Whether or not an act of the legislature pertains to a matter of local or state-wide concern becomes a question for the courts when a conflict of authority arises."

■ We see nothing unconstitutional, or otherwise wrong, with the City Ordinance and Charter under which the City of Tucson operates that might keep that city from exercising the powers and privileges it now enjoys, and we accordingly hold:

(1) That its Ordinance may provide for death benefits payable in part by the City.

(2) May provide joint survivorship annuities payable in part by the City.

(3) May provide for the investment of pension funds in the purchases (as from an insurance company) of annuities and other benefits provided by the Ordinance.

McALISTER, C. J., concurs.

ROSS, Judge (concurring).

I concur. I am convinced that when the City of Tucson abandoned its own plan of insurance and adopted the statutory plan provided for by the Police Pension Act of 1937 (Chapter 40, Session Laws of 1937; sections 16–1801 to 16–1822, Arizona Code 1939), it could not, so far as the police department of the city was concerned, return to its own plan.

240

As said Act did not provide for any others of the city's employees than those in the police department, the city was at liberty to use its own plan (Ordinance No. 691) as to such other employees.

No reason occurs to me against the validity of the plan proposed by the city for its employees other than those in the police department.