957 P.2d 341

**CITY OF TUCSON, a municipal corporation, Plaintiff/Appellee,**

**v.**

**STATE of Arizona; Jane Dee Hull, in her official capacity as Secretary of State of Arizona, Defendants/Appellants.**

**No. 2 CA–CV 97–0055.**

Court of Appeals of Arizona, Division 2, Department B.

Oct. 14, 1997.

Reconsideration Denied Dec. 2, 1997.

Review Denied June 2, 1998.

Thomas J. Berning, City Attorney by Catherine M. Shovlin and Dennis McLaughlin, Tucson, for Plaintiff/Appellee.

Grant Woods, Attorney General by Eryn M. McCarthy and Anthony B. Ching, Phoenix, for Defendants/Appellants.

OPINION

HOWARD, Judge.

Section 16–204, A.R.S., enacted in 1996, restricts elections held by political subdivisions to four specified dates during the year.[1] The City of Tucson sued the State of Arizona, claiming that the statute is invalid as applied to the City because it conflicts with Chapter XVI of the Tucson City Charter. The trial court ruled in favor of the City, holding that the consolidated election schedule of § 16–204 does not apply to the City and that the City Charter governs city elections. In this appeal from that ruling, we review *de novo* the trial court's interpretation of the charter and statute, as well as its conclusions of law. *Turf Paradise v. Maricopa County*, 179 Ariz. 337, 878 P.2d 1375 (App.1994). For the reasons stated below, we reverse.

Section 16–204(A) contains the following finding of purpose:

> While the legislature recognizes that the method of conducting elections by political subdivisions including charter counties and cities may be a matter of local concern, the legislature finds and determines that for the purposes of increasing voter participation and for decreasing the costs to the taxpayers it is a matter of statewide concern that all elections in this state be conducted on a limited number of days and, therefore, the legislature finds and declares that the holding of all elections on certain specific consolidated days is a matter of statewide concern.

Chapter XVI, § 2, of the City Charter contains the following provision:

> Primary elections under this Charter shall be held on the third Tuesday in September of each year in which a general election for the offices of mayor and coun-

cilmen, or councilmen only, shall be held as hereinafter provided by this chapter. The provisions of the general laws of the State of Arizona relating to and governing primary elections and the nomination of elective officers, whether by primary or certificate of nomination ... applicable to a city of the population and the class of this city, shall apply and govern the holding of primaries and nominations of elective officers....

Under § 16–204(B)(3), the 1997 primary election would have been held on September 9; in accordance with the City Charter, however, the election was held on September 16, the third Tuesday in September.[2] Further, the City Charter also allows the City Council to hold special elections on days other than those specified under the consolidated election schedule. City Charter Ch. XVI, § 6.

The State initially argues there is no conflict between the statute and the Charter because the Charter incorporates the general law concerning primaries. We disagree. Although the City Charter states that the general laws relating to primaries apply to City elections, it specifies a date for the City's primary election. Under the usual rules of construction, the specific designation takes precedence over the language on general election laws. *Mercy Healthcare Arizona v. Arizona Health Care Cost Containment System*, 181 Ariz. 95, 887 P.2d 625 (App.1994). *See also* City Charter Ch. XVI, § 7. Moreover, the City's interpretation of its own Charter is entitled to some weight. *See City of Mesa v. Killingsworth*, 96 Ariz. 290, 394 P.2d 410 (1964); *Arizona Foundation for Neurology Psychiatry v. Sienerth*, 13 Ariz. App. 472, 477 P.2d 758 (1970). Further, the requirement under the statute's consolidated election schedule that special elections be

---

1. Section 16–204(B) provides in pertinent part:

   Notwithstanding any other law or any charter or ordinance of any county, city or town to the contrary, an election held for or on behalf of a county, city or town, a school district, a community college district or a special district organized pursuant to title 48, chapters 5, 6, 8, 10 and 13 through 16 may only be held on the following dates:
   1. The second Tuesday in March.
   2. The third Tuesday in May.

3. The eighth Tuesday before the first Tuesday after the first Monday in November. A primary election that is held in an odd-numbered year may be held on this date.
4. The first Tuesday after the first Monday in November. A general election that is held in an odd-numbered year may be held on this date.

2. The State does not contest the validity of the results of the City primary.

held on certain days interferes with Chapter XVI, § 6, which allows the City to schedule special elections on other days. We conclude, therefore, that the City Charter conflicts with the statute.

Our courts have historically held that general state laws pertaining to matters of statewide concern override conflicting city charters. As our supreme court stated in *Humphrey v. City of Phoenix,* 55 Ariz. 374, 388, 102 P.2d 82, 88 (1940):

> Section 2 of such article provides that a home rule charter must be "consistent with, and subject to, the Constitution and the laws of the State." We think it is a well-settled rule in this jurisdiction that the general laws of the state are operative in cities incorporated under Article XIII.... *Clayton v. State,* 38 Ariz. 466, 300 Pac. 1010 [1931]; *State v. Jaastad,* 43 Ariz. 458, 32 Pac.(2d) 799 [1934].

*See also City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon,* 67 Ariz. 330, 195 P.2d 562 (1948); *City of Phoenix v. Michael,* 61 Ariz. 238, 148 P.2d 353 (1944); *Luhrs v. City of Phoenix,* 52 Ariz. 438, 83 P.2d 283 (1938). In *City of Tucson v. Walker,* 60 Ariz. 232, 239, 135 P.2d 223, 226 (1943), the supreme court quoted with approval the following language in *Axberg v. City of Lincoln,* 141 Neb. 55, 2 N.W.2d 613, 614 (1942):

> "The purpose of the home rule charter provision of the Constitution was to render the cities adopting such charter provisions as nearly independent of state legislation as was possible. Under it a city may provide for the exercise of every power connected with the proper and efficient government of the municipality where the legislature has not entered the field. *Where the legislature has enacted a law affecting municipal affairs, but which is also of state concern, the law takes precedence over any municipal action taken under the home rule charter.*"

(Emphasis added.) More recently, in *Jett v. City of Tucson,* 180 Ariz. 115, 882 P.2d 426 (1994), the supreme court reviewed a city charter provision allowing the council to remove a city magistrate to determine whether it was consistent with state law and found the removal of a city magistrate to be a matter of statewide concern.

Relying on *Strode v. Sullivan,* 72 Ariz. 360, 236 P.2d 48 (1951), the City contends its primary election is strictly a matter of local concern. In *Strode,* our supreme court found that a provision of the Phoenix City Charter prohibiting partisan designation on the ballot overrode a state statute requiring such a designation because the method and manner of conducting the city election was a matter of local concern. *Strode* is distinguishable. It did not involve an election date or a consolidated election schedule, and the statute in that case, unlike § 16–204, did not contain a finding of statewide importance. Contrary to the City's position at oral argument, *Strode* did not establish an automatic, blanket rule prohibiting state statutes that infringe on any aspect of charter cities' municipal election procedures and preferences. In fact, the court in *Strode* acknowledged the general rule that if a matter "can be said to be a subject of state concern," then "where there is a conflict between the provisions of the charter of a self-governed city and the statutory law, the former must give way to the latter." *Id.* at 363, 236 P.2d at 50. *Strode,* therefore, is not determinative.

The Arizona Constitution establishes the relationship between charter cities and the State. Article XIII, § 2, provides in pertinent part that "[a]ny city ... may frame a charter for its own government consistent with, and subject to, the Constitution and the laws of the State...." Although this provision gives charter cities autonomy, that autonomy is tempered by the requirement that the charter be consistent with state law.

The legislative authority of the State is vested in the legislature. Ariz. Const. art. IV, pt. 1, § 1. The Constitution requires the legislature's involvement in elections, including those conducted by charter cities, on many levels. *See* Ariz. Const. art. IV, pt. 1, § 1(8) (city initiative and referendum elections must comply with the general laws; city may establish basis for calculating percentages of signatures until provided by general law); Ariz. Const. art. IV, pt. 2, § 19(11), (20) (no local laws shall be enacted on the conduct of elections, allowing general laws by

implication); Ariz. Const. art. VII, § 1 (legislature can provide for a method for elections other than by ballot); Ariz. Const. art. VII, § 10 (legislature shall enact primary election law providing for the nomination of state, county, and city officials); Ariz. Const. art. VII, § 12 (legislature shall adopt a registration system and other laws to prevent abuses of the voting privilege); Ariz. Const. art. VII, § 16 (legislature required to adopt campaign finance law applicable to the cities and the state).[3]

■ Having considered the case law and constitutional background, we now turn to the statute itself. The language of § 16–204 and its legislative history both indicate a strong state interest. The legislative declaration in subsection (A) that the statute regulates a matter of statewide concern is entitled to our deference. *Arizona Center for Law in the Public Interest v. Hassell,* 172 Ariz. 356, 837 P.2d 158 (App.1991); *Humphrey.* The legislative history supports that declaration.[4] In 1991, the legislature adopted a voluntary consolidated election schedule and required reporting of the results. 1991 Ariz. Sess. Laws, ch. 246, §§ 4–6. Reports from the two-year pilot program indicated the consolidated election schedule resulted in significantly increased voter turnout and reduced election costs. Attempts to refer approval of the mandatory consolidated schedule to the voters, however, or to enact a mandatory consolidated election schedule in 1993, 1994, 1995, and early 1996 failed. During these attempts, speakers before the legislative committees voiced concern about voter confusion and fatigue, administration of consolidated elections, and conflict with cities' charters. Other speakers supported the proposed legislation because the proliferation of elections was expensive and led to voter apathy.

■ After considering the arguments, the legislature determined that the benefits of increased voter turnout and reduced costs were of statewide concern and outweighed the potential problems. In light of the constitutional framework, the legislative history, and the legislature's express findings and declaration in § 16–204(A), we agree that the statute pertains to matters of statewide concern and does not "relate to purely municipal affairs." *Strode,* 72 Ariz. at 365, 236 P.2d at 51.

Where, as here, an issue involves both local and statewide interests, a balancing test evaluating the issues and determining which is paramount is also appropriate. 2 Eugene McQuillin, *The Law of Municipal Corporations* § 4.85 (3d ed.1996). At the outset, we find persuasive the fact that the State will be unable to achieve full implementation of the consolidated election schedule and to assess its effects on costs and voter turnout unless all political subdivisions of the State are required to follow the schedule. While the City has an interest in maintaining its autonomy and preserving its Charter, a one-week change in the date of its primary election is a minor intrusion upon its autonomy. Although certain special elections may be delayed, elections are typically planned far in advance, and the consolidated schedule should result in minimal actual delay. The City may also conduct elections by mail on any dates it chooses. A.R.S. § 16–409. The City has not produced evidence of any substantial interference with its election process.

The City argues that, although the consolidated election schedule is designed to cut costs and increase voter turnout, it could have the deleterious effects of creating voter inattention and confusion. The record, however, contains no evidence of these effects to overcome our deference to the legislature's findings. The City also claims that § 16–204 requires it to relinquish control of the elections board to the county and delegate its Voting Rights Act responsibilities. We disagree. Section 16–205(C) allows, but does not require, cities to enter into intergovern-

---

**3.** At oral argument, the City argued for the first time that § 16–204 conflicts with Ariz. Const. art. XIII, § 4. Because this argument was not presented to the trial court, we will not address it on appeal. *Scottsdale Princess Partnership v. Maricopa County,* 185 Ariz. 368, 916 P.2d 1084 (App. 1995).

**4.** Appellate courts may take judicial notice of legislative history. *Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 872 P.2d 668 (1994).

mental agreements with the county for the administration of elections. In that event, the county appoints the election board after consultation with the City. Therefore, the consolidated election schedule does not deprive the City of control of the elections board or its Voting Rights Act responsibilities. The State's interest is paramount.

The legislature has acted in an area of statewide concern and its legislation takes precedence over the City's Charter. *Walker.* Further, the State's interest is paramount.

The consolidated election schedule under § 16–204, therefore, governs City elections. The trial court's decision is reversed.

PELANDER, P.J., and ESPINOSA, J., concur.