[S. F. No. 3472.   In Bank.—January 30, 1904.]

THE PEOPLE ex rel. Charles J. Martin, Appellant, v. GEORGE D. WORSWICK, Respondent.

142   71
e146 513
j146 517

QUO WARRANTO—VALIDITY OF ELECTION FOR MAYOR—REGISTRATION OF VOTERS—INSUFFICIENT COMPLAINT.—A complaint in *quo warranto,* to determine the validity of an election for mayor of the city of San Jose, which merely alleges that copies of an old great register were used at the polls instead of copies of a new one required by law, but which does not aver that the names of all the voters were not on the new register, does not state a cause of action.

ID.—NEGLECT OF OFFICERS OF ELECTION—QUALIFIED VOTERS NOT AFFECTED—CONSTITUTIONAL LAW.—Qualified voters, who were properly registered, could not be deprived of their votes because the officers of election neglected to perform the ministerial and directory duty of having the proper register before them for examination, and any provision of law having that effect would be unconstitutional.

ID.—MUNICIPAL ELECTION—CITY CHARTER—COPIES OF LAST COMPLETED GREAT REGISTER—NEW REGISTRATION NOT COMPLETED.—Under the freeholders' charter of the city of San Jose, copies of the last completed great register are to be used at a general municipal election held in said city, besides a supplemental list of all voters who have registered since the time of the last completed great register; and a new registration commenced in January for the year 1902, which was not to be completed until September, was intended only

for the general state election in November of that year, and was not required to be used at a municipal election held in said city in the month of May, 1902.

ID.—QUALIFICATION OF VOTERS—OBJECT OF REGISTRATION—CONSTRUCTION OF REGISTRY LAW.—Registration is not a constitutional qualification of voters; but is simply a reasonable method of identifying qualified voters. A registry law should not be construed so as seriously to impair the practical working of a city government, and leave it without a legislative department, unless clearly imperative.

ID.—BALLOTS IMPROPERLY CAST—INSUFFICIENT AVERMENT.—An averment in the complaint that one hundred and twenty-four ballots were cast by voters who were registered after the commencement of forty days next preceding the general election is not sufficient, where there is no showing in the complaint that such ballots, if improperly received, could have changed the result of the election.

APPEAL from a judgment of the Superior Court of Santa Clara County. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and E. E. Cothran, for Appellant.

John E. Richards, and F. B. Brown, for Respondent.

McFARLAND, J.—The defendant was elected to the office of mayor of the city of San Jose at a general city election held on the third Monday in May (May 19), 1902, and afterwards qualified and took possession of said office. The present proceeding is in the nature of *quo warranto*, brought in the name of the people of the state, on relation of Charles J. Martin, to have it adjudicated that said election was illegal, null, and void, that said Worswick be ousted from his office, and that the relator, Martin, who was the immediate predecessor of defendant in the office, is entitled to said office upon the ground of his right to hold the same until the legal election and qualification of a successor. A demurrer to the complaint was sustained in the court below; and plaintiff declining to amend, judgment went for defendant. From this judgment plaintiff appeals. There are two counts in the complaint, but the second incorporates nearly all the material averments of fact contained in the first, and there is no substantial difference between the two counts.

It is averred that at the said election of May 19, 1902, 4,694 ballots were cast, and that as to 2,857 of the persons who cast said ballots ''the only great register or register of voters used by and for said 2,857 persons casting said ballots, as aforesaid, was made, arranged and in the office of the county clerk of said Santa Clara County prior to the first day of January, 1902''; and that the names of said 2,857 voters, ''were upon the great register of the said county of Santa Clara, before the first day of January, 1902, and the said great register containing the said 2,857 names was by the county clerk of the said county of Santa Clara made and arranged for each election precinct of said city of San Jose during the year 1900, and before the first day of January, 1902.'' These are the main material averments of the complaint; and appellant contends that the charter of the city of San Jose provides that city elections shall be conducted under the general election laws of the state, and that under those laws as they existed at the time of said city election no one could legally vote at such election who had not been registered forty days before such election on the new register which the clerk commenced to prepare on January 1, 1902. No fraud is alleged; and it is not averred that any legal voter was denied the right to vote, or that the 2,857 persons were not, independent of the question of registration, qualified voters, or were not on a legal register, or that the rejection of these ballots would have changed the result. Therefore, even if the correctness of appellant's theory that no one was a legal voter at such election who was not on the new register be conceded, still the complaint is fatally defective because it is not averred therein that the 2,857 voters were not on such new register. The averment is only that copies of the old register were used at the polls instead of copies of the new register. But if the said persons were otherwise qualified voters, and had caused their names to be properly registered, they did not lose their votes because the officers of the election neglected to perform the ministerial and directory duty of having the proper register before them for examination. If there were any provisions in the registry laws which clearly contemplated the disfranchisement of a qualified voter for such neglect by the election board, it would be unconstitutional.

Under the foregoing facts it is perhaps unnecessary to look further into the case, but as counsel have elaborately discussed other questions, it is no doubt expected that we shall notice them: and we will do so briefly.

We think that the register in existence in 1901 was the proper one to be used at the said city election; and that therefore the demurrer would have been properly sustained, even if the averments of the complaint had been sufficient to raise the questions discussed in the points and arguments of appellant.

The municipality of the city of San Jose is organized under what is known as a "freeholders' charter." The charter was adopted in 1897; and the two provisions of it material here are section 1 of chapter 1 of article II, and section 19 of article XIII. Said section 1 is as follows: "The provisions of all general laws governing elections for state and county officers not inconsistent with the provisions of this charter are hereby adopted as the law governing city elections, and the mayor and common council, and the city clerk respectively, shall exercise the powers and perform the duties conferred or imposed by law on boards of supervisors and county clerks concerning elections." Said section 19 is as follows: "It shall be the duty of the board of supervisors of the county of Santa Clara, when great registers are being printed, to provide for the printing of a sufficient number of such registers, in addition to the number required otherwise by law, to be printed for the general and special municipal elections to be held or likely to be held in the city of San Jose, and it shall be the duty of the county clerk of said county to furnish such registers in sufficient number when so required by the mayor and common council of said city. The said county clerk, when so required, for the purpose of a general or special municipal election, shall furnish to said mayor and common council a supplemental list of all voters who have registered since the time of the last printed great register."

Said section 1 was afterwards amended, but only as to special elections, all of the language used in the section as above quoted being retained; and as the election here in question was a general city election, the amendment is of no consequence.

At the time of the adoption of the charter the general laws

governing the election of city and county officers provided
for a great register in each county, and that the whole of
said register should be printed, and further, that there should
be a new great register only when ordered by the board of
supervisors. In 1899 there were amendments to the general
laws governing the election of state and county officers; and
by these amendments it was provided, among other things,
that in every even-numbered year there should be a new
register "of the names of the qualified electors of each of the
counties of the state" and of consolidated cities and counties;
and that only part of the same should be printed. It was also
provided that the county clerk should commence the new
register on the first day of January of each of such even-num-
bered years, and that it should "be in progress at all times
except during the forty days immediately preceding any elec-
tion, when it shall cease." It was also provided that the
clerk must enter in the register "the names of the qualified
electors of the county"; that the names of no naturalized citi-
zen shall be entered unless it appear that "he would be an
elector of the county at the next succeeding election"; and
that the clerk must purge the register in the first week in
September. (Pol. Code, secs. 1094 et seq.) It is apparent from
these and other provisions of the code that the register which
is to be commenced on January 1st, and is not to be com-
pleted until September, is intended solely for the general
election for state and county officers, which occurs in No-
vember. Indeed, the general laws of the state touching the
registration of voters prior to state and county elections have
no bearing on an election of city officers in a municipality
governed by a freeholders' charter, except so far as they are
adopted by the charter itself. It is conceded that the election
here in question was a "municipal affair," and, of course, the
city could have adopted any system of registry, or could have
declined to have any at all. The reference in section 19 of
the charter is clearly to the last completed register; the word
"printed" was evidently used because at that time, and for
many years previous thereto, the register was printed in ac-
cordance with the provisions of the law then existing; but the
thing meant was clearly the register which at that time it was
the custom to print. The register itself is the same as it was
before the amendments of 1899; the difference is in the extent

to which it must be printed—the law now providing only for the printing of indexes and copies of original affidavits of registration. But the thing designated by said section 19 is the last completed register, which is the same now as when the charter was adopted. We see no significance in the statement of counsel that on the first day of January the old register becomes *functus officio*; of course, it cannot be used for the next state and county election, but it is still in existence, and is the register which, by the provisions of the charter, is to be used at the general city election. It is competent, and not uncommon, for a law—whether a statute, charter, or ordinance—to incorporate, as part of it, some provision of another law; and while this form of legislating may sometimes lead to confusion, it is perfectly legitimate where the meaning is kept clear and the operative words are sufficient to effect the intended purpose—and such we think is the case here with respect to the adoption of the charter of the last completed register.

It is also averred that one hundred and twenty-four ballots were cast by voters whose names were registered after the commencement of the forty days next preceding the city election; but there is very slight allusion to this averment in the briefs of counsel, and it is sufficient to say on the point that there is no showing that these ballots, even if improperly received, could have changed the result.

It may be observed that the contentions of appellant rest entirely upon grounds that may be properly designated as purely technical. Registration is not a constitutional qualification of voters. It is simply a reasonable method of identifying qualified voters, and in this view only is a registration law itself constitutional. There is no pretense that any qualified voters were prevented from voting, or that the circumstances were such that there might have been an unascertainable number of such voters so prevented, or that any one voted who was not a constitutionally qualified elector, or that the will of a majority of the qualified voters was not expressed in the result of the election. Indeed, from all that appears in the case, the majority for the respondent may have been so overwhelming that it would have been folly to attempt to contest the election. Under the circumstances, the construction of the law contended for by appellant would seriously impair

the practical working of the city government. Moreover, if applied to the city councilmen, who hold for a fixed term, and not until their successors are elected and qualified, it would entirely destroy the existence of the governing body of the municipality, and leave the city without any legislative department. No construction working such result should obtain, unless clearly imperative.

The judgment appealed from is affirmed.

Shaw, J., Angellotti, J., Van Dyke, J., and Henshaw, J., concurred.

Mr. Justice Lorigan, deeming himself disqualified, did not participate in the decision.