[No. 8514.]

## BURKHOLDER V. THE PEOPLE ET AL.

1. PUBLIC OFFICER—*Removal for Misconduct.* The phrase "as may be provided by law," in sec. 3 of art. XIII of the Constitution, when applied to an elective officer whose term is definitely fixed, refers only to a statute or a provision of the Constitution. (102.)

2. STATUTES—*Statutory Penalty Exclusive.* Where a statute provides that the conviction of a public officer of specified offences shall "work a for-

feiture of his office," nothing but a conviction, in the absence of other statutory provisions, effects such removal. (103.)

The officer is not to be ousted by *quo warranto* proceeding, upon proof of the offense, no conviction having been had. The provisions of the code, secs. 320, 326, are no warrant for *quo warranto* proceedings in such case. (106.)

3.  IRRIGATION DISTRICTS—*Removal of Officer—Statute Construed.*   An officer of an irrigation district is not to be excluded from his office for the offences denounced in Rev. Stat., sec. 3466, until conviction thereof. The commission of the offense, without conviction, has not this effect. (106.)

*Error to Adams District Court.*   HON. H. S. CLASS, Judge.

Mr. CLYDE O. EPPERSON, for plaintiff in error.

Mr. SAMUEL W. JOHNSON, Mr. I. B. MELVILLE, for defendant in error.

BAILEY, J., delivered the opinion of the court.

This is a proceeding in the nature of *quo warranto,* brought by the People on the relation of the District Attorney of the First Judicial District of Colorado, under Chapter 28 of the Civil Code, to remove defendant, a member and president of the board of directors of The East Denver Municipal Irrigation District, from office for alleged misconduct and malfeasance, no conviction having been had. The judgment was one of removal, and the defendant brings the record here for review.

The constitutional provisions involved and for consideration, as having a bearing on the case, are sec. 1 of art. XII.

"Every person holding any civil office under the state or any municipality therein, shall, unless removed according to law, exercise the duties of such office until his successor is duly qualified."
and section 3 of article XIII:

"All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office in such manner as may be provided by law."

The statutory provisions involved are sections 320 and 326, Code, R. S. 1908, as follows:

"An action may be brought by the district attorney in the name of the people of this state, upon his own information, or upon the relation and complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within his district in the state, and it shall be the duty of the District Attorney to bring the action whenever he has reason to believe that any such office or franchise has been usurped, intruded into or unlawfully held, or exercised by any person, or when he is directed to do so by the Governor; and in case such District Attorney shall neglect or refuse to bring such action upon the complaint of a private party, such action may be brought by such private party, upon his own relation, in the name of the people of the state."

"When a defendant, against whom such action has been brought, is adjudged guilty of usurping or intruding into, or unlawfully holding any office, franchise or privilege, judgment shall be rendered that such defendant be excluded from such office, franchise or privilege, and that he pay the cost of the action. The court may also, in its discretion, impose upon the defendant a fine not exceeding five thousand dollars, which fine, when collected, shall be paid into the treasury of the state."

And sec. 3466, R. S. 1908, concerning irrigation districts, reading, in part:

"No director or any officer named in this act shall, in any manner, be interested, directly or indirectly, in any contract awarded or to be awarded by the board, or in the profits to be derived therefrom; nor shall receive any bonds, gratuity or bribe, and for any violation of this provision such officer shall be deemed guilty of a felony, and such conviction shall work a forfeiture of his office, and he shall be punished by a fine not exceeding five hundred dollars, or

by imprisonment in the penitentiary not exceeding five years nor less than one year."

It is contended on behalf of defendant that even though the acts complained of do constitute misconduct and malfeasance in office, still since the statute has provided the causes for, and the conditions upon which, such officer may be removed, and there having been no conviction as provided by law, no removal by *quo warranto* is competent, until that is shown.

On behalf of relator it is contended that the doing, by the defendant, of the matters and things charged in the specifications is against public policy and good morals, therefore, though not specified by statute as grounds of forfeiture and removal, he is nevertheless liable thereto under the code provisions above quoted in connection with sec. 3, art. XIII, of the Constitution.

There are a number of important and interesting questions raised by the record, and learnedly and elaborately discussed in the briefs, but only one need be considered, as a decision of it is conclusive against the propriety and validity of the judgment rendered.

Under sec. 3, art. XIII, of the Constitution, the words "as may be provided by law," when applied to an elective officer whose term of office is definitely fixed, can have no other reference than to constitutional or statutory law. *Trimble v. The People,* 19 Colo. 187, 34 Pac. 981, 41 Am. St. 236. The subject of forfeiture of and removal from office being strictly a matter of constitutional and statutory cognizance, there is with us no such thing as a common law forfeiture and removal from office. It follows, therefore, that whenever, as in the case of irrigation officers, the legislature has provided the causes for and conditions of forfeiture and removal from office, they are exclusive. This particular act provides in great detail for the organization and government of irrigation districts. It is clear, comprehensive and complete, providing a method for doing

every act which an irrigation district may lawfully do. All the steps necessary for the creation and organization of an irrigation district, for the management and direction of its affairs and business during its existence, including the method of dissolution, are found in the act itself. It is not necessary to go outside of it to find authority for the performance of any act incident to the affairs of a district. It is not to be presumed that the legislature, having enacted a statute complete in every particular, which makes express provision for the qualification and election of district officers, and for forfeiture and removal from office, intended that removal should be accomplished in any other or different way. The statute does not say that the act of being interested in any contract awarded by the board, or in the profits to be derived therefrom, shall work a forfeiture, but specifically provides that the officer committing the acts referred to shall be deemed guilty of a felony, and upon conviction shall forfeit his office. If the legislature intended that the act itself, rather than the conviction thereof, should work a forfeiture, it would have so declared. Since the statute declares that it is conviction which works forfeiture, that is equivalent to providing that nothing else does so.

This court, in *Trimble v. The People, supra,* having under consideration both the constitutional provisions above quoted, said, on page 194:

"The words 'according to law' in this section (sec. 1, art. II) can have no other construction than that such officers shall be removed as provided by the Constitution or statute law."

Our Constitution makes no provision for the forfeiture of and removal from office of an irrigation officer, but the statute does, and its requirements must be satisfied before such forfeiture and removal takes place.

In *State ex rel. Brandt v. Thompson,* 91 Minn. 279, 97 N. W. 887, the court said:

"The subject of removal of all officers is within legis-

lative control, and where that body prescribes a manner and method of removal it is exclusive. A method of removal is provided by the statutes under which East Grand Forks is now incorporated, and the method there pointed out must be followed. Appointive officers may be removed by the appointing power, and elective officers by a conviction of misconduct."

The Supreme Court of Kansas fully discussed the subject now under consideration in the case of *State ex rel. v. Wilson*, 30 Kan. 681, 2 Pac. 828, which involved similar facts and a similar statute to the one here under consideration. In that case it was also contended that the defendant had forfeited his office by reason of the rules of the common law. In that opinion the court spoke as follows:

"Sec. 78 of the first-class-city act, as before stated, says that the mayor shall hold his office for two years, and until his successor is elected and qualified; and certainly no rule of the common law, if there were any such rule, should be allowed to overturn and destroy this express provision of the statute. The mayor will certainly hold his office for two years, and until his successor is elected and qualified, unless some law of at least equal force with the foregoing statute can be found providing for a termination of the office at some earlier period of time. Of course, all statutes in *pari materia* must be construed together, and the real law ascertained from all of them. If we should find some other statute providing for a termination of the office at some earlier period than that fixed by the foregoing statute, then we should try to give both statutes force, and should construe the law with reference to both of them. But how we could say, in the face of our own statutes and against their plain implications, if not against their express provisions, that because a person may have forfeited his office for some particular thing under the old common law, that he will still forfeit his office for a similar thing in Kansas, notwithstanding the statutes, is not quite clear.

The common law is not paramount to the statutes, and it cannot overturn or destroy them. We have statutes specifically providing for the termination of the office of mayor by resignation, forfeiture, removal, etc., at an earlier period of time than that prescribed by said sec. 78. We have statutes relating specifically to forfeitures of the office of mayor of cities of the first class and relating to the removal of the incumbent from such office, and why should we not resort to the procedure provided for by these statutes? It would seem that the legislature has had the entire subject-matter of the term of office, and of the termination thereof by resignation, forfeiture, removal, etc., under consideration, and is it not fair to presume that the legislature intended to cover the entire ground, and therefore that there can be no causes for forfeiture, and no removals, except such as the legislature has itself designated and prescribed?"

The following authorities seem to be in point upon the question before us:

"Since the remedy by *quo warranto,* or information in the nature thereof, is employed only to test the actual right to an office or franchise, it follows that it can afford no relief for official misconduct, and cannot be used to test the legality of the official action of public or corporate officers. * * * And misconduct upon the part of a public officer is not of itself ground for forfeiting his office upon proceedings in *quo warranto,* since the ground of forfeiture should be first judicially established before the information may be entertained. If, however, the acts of misconduct charged against the officer are declared by statute to work a forfeiture of his office, an information will lie, and judgment of ouster may be given against the officer upon the ground of such misconduct or breach of official duty." High's Extraordinary Legal Remedies, 3rd ed., sec. 618.

"The court which has original jurisdiction in *quo warranto* may determine the question of right or the question of forfeiture for itself, unless the statute provides that for-

feiture shall follow a criminal prosecution and sentence, and if the act complained of does not *ipso facto* create a forfeiture, and is only a misdemeanor in office on account of which the law provides the manner in which the vacancy is to be declared, it is held that *quo warranto* will not lie." 17 Ency. Pl. & Pr., 400.

Undoubtedly if our statute provided that the doing of the acts, or any of them, charged against defendant should work a forfeiture of his office, he could then have been proceeded against by *quo warranto*. *State ex rel. v. Foster,* 32 Kan. 14, 765; 3 Pac. 534. Forfeiture follows an act only as a result of some positive rule of law declaring that such act shall result in forfeiture. As stated, in substance, by the Supreme Court of Kansas, in *State ex rel. v. Wilson, supra,* the court has no power to create a forfeiture, and no power to declare a forfeiture, where none already exists. The forfeiture must exist in fact before the action of *quo warranto* is commenced. The common law is not paramount to the statutes, and they must define and point out the cause or causes of forfeiture and removal, else none exist.

The District Court was in error in holding, under the circumstances of this case, that *quo warranto* is the proper remedy to oust defendant from his office, on account of the alleged acts of misconduct and malfeasance, since no conviction has been had as required by statute.

If our law in this behalf is inadequate to afford full and proper remedy, that is clearly the fault of the legislature, and relief must be sought at the hands of that body, not from the courts, for they are powerless to give it.

The judgment is reversed and the cause remanded to the trial court with directions to dismiss.

*Reversed and remanded.*

Decision *en banc.*