IN THE

# SUPREME COURT

OF

# OREGON.

Submitted on briefs January 29, judgment for defendants February 5, 1924.

## STATE ex Rel. STONE v. WILLIAM ANDRESEN, C. H. CAUFIELD and FRANK H. CROSS.

(222 Pac. 585.)

**Municipal Corporations—Charter Elections Authorized.**

1. Under Constitution, Article IV, Section 1a, reserving power to voters of municipalities as to all local, special and municipal legislation, cities and towns have unlimited authority to provide the manner and time of holding elections in respect to the adoption of charters or amendments thereto.

**Municipal Corporations—Special Election to Choose Commissioners of City not Inhibited.**

2. Neither by Constitution, Article II, Section 14a, providing that municipalities shall hold their nominating and regular elections at the same time that general elections for state and county officers are held, nor by Laws of 1919, Chapter 283, being an act to carry such constitutional section into effect, nor by any other constitutional inhibition, is a municipality prohibited from calling a special election to elect commissioners after the adoption of a special charter for city government, and from specifying times and places of holding such an election other than those prescribed for holding state and county elections.

**Elections—"Regular Elections" and "Special Elections" Distinguished.**

3. A "regular election" is an election recurring at stated times fixed by law, while a "special election" is one arising from some exigency outside the usual routine.

Original proceedings in *quo warranto*.

110 Or.—1                 (1)

In Banc.

JUDGMENT FOR DEFENDANTS.

For relator there was a brief over the name of *Mr. Earle C. Latourette.*

For defendants there was a brief over the names of *Messrs. Schuebel & Beattie* and *Mr. Grant B. Dimick.*

For Clackamas County, Oregon, there was a brief over the name of *Mr. L. Stipp,* District Attorney.

This is an original proceeding in the nature of *quo warranto,* to inquire into the legality of the election of defendants to the offices of commissioners of Oregon City at a special election held on December 18, 1923.

The complaint set up facts which relator claimed rendered their election void. The defendants appeared in answer to the complaint, and, to save complexity in pleading, a statement of facts was agreed upon and stipulated between the parties, and the matter was submitted upon such stipulation. The stipulation, omitting the title, is as follows:

"It is hereby stipulated by and between Wm. M. Stone, relator, by his attorney, Earl C. Latourette, and William Andresen, C. H. Caufield and Frank Cross, defendants, by their attorneys, Schuebel & Beattie and Grant B. Dimick:

"That Oregon City has a population of more than two thousand inhabitants.

"That at a special city election held in Oregon City, Oregon, on the 6th day of November, 1923, being the first Tuesday after the first Monday in November, 1923, and being the date of a general special state election held in the state of Oregon, the legal voters of Oregon City adopted a charter for the government of Oregon City.

"That on the 21st day of November, 1923, the city council of Oregon City met in special session at the council chamber of Oregon City and canvassed the vote on the adoption of the charter, and at which time the council found that 705 votes had been cast for the charter and 583 against the charter, making a majority for the adoption of the charter of 122 votes.

"That thereafter and upon the 21st day of November, 1923, the mayor of Oregon City issued his proclamation declaring that the said charter had been duly adopted by the legal voters of Oregon City.

"That all the proceedings required by the Constitution and laws of the State of Oregon, and of the charter and ordinances of Oregon City, necessary to be done in connection with the adoption of the charter by municipal corporations, and especially of the city of Oregon City, were done, and that the charter in this stipulation referred to, a printed copy of which is attached to this stipulation, was adopted by the legal voters of Oregon City.

"That Section 172 of said charter is as follows:

" 'Sec. 172.   Should this charter be adopted a special election shall be held on the 18th day of December, 1923, for the purpose of electing three commissioners as provided for in this charter, who shall hold their office from the 2d day of January, 1924, until the 2d day of January, 1925, following the general election in November, 1924, and until their successors shall be elected and qualified.'

"That thereafter and in accordance with all the provisions of the charter of Oregon City, the city council of Oregon City caused an election to be held in Oregon City, on the 18th day of December, 1923, for the purpose of electing three commissioners of Oregon City, to hold their office from the 2d day of January, 1924, until the 2d day of January, 1925, and until their successors should be elected and qualified.

"That all the proceedings in connection with the calling of said special election, the appointment of judges and clerks of election, and the holding of said special election, were done as provided for in the charter of Oregon City, and not otherwise.

"That at the special election held in Oregon City on the 18th day of December, 1923, for the purpose of electing three persons to the office of commissioner for Oregon City for the year 1924, the defendants and each of them were elected, according to the provisions of the charter of Oregon City, by the legal voters of Oregon City voting at said special election, each of said defendants having received a majority of all votes cast at said election.

"That thereafter and on the 21st day of December, 1923, the city council of Oregon City met in special session at the council chamber and went into a committee of the whole, and canvassed the vote cast at said special election, and found that each of said defendants had received a majority of all votes cast at said election for commissioner, and the said council then and at said time declared the defendants, and each of them, to be the duly elected commissioners for Oregon City for the ensuing year 1924, or until the successors are elected and qualified.

"That thereafter and on the 21st day of December, 1923, the mayor of Oregon City issued his proclamation declaring the defendants, Wm. Andresen, C. H. Caufield and F. H. Cross, duly elected to the office of commissioners for Oregon City for the year 1924, or until their successors are elected and qualified.

"That thereafter and on the 28th day of December, 1923, the city recorder of Oregon City issued a certificate of election to the said defendants, Wm. Andresen, Charles H. Caufield and F. H. Cross, and to each of them, declaring the said defendants elected to the office of commissioner for Oregon City.

"That thereafter and on the 31st day of December, 1923, the said defendants, Wm. Andresen, Charles H. Caufield and F. H. Cross, and each of them, took the oath of office and were sworn in as commissioners for Oregon City, and on the 2d day of January, 1924, took charge of the business affairs of Oregon City, and are now acting as commissioners of Oregon City, and are conducting the business affairs of Oregon City under and by virtue of the charter adopted on the 6th day of November, 1923, and under and by virtue of

their election to the office of commissioners for Oregon City, at a special election held on the 18th day of December, 1923, as provided for in said charter of Oregon City.

"It is hereby further stipulated that the only question to be determined by the court in connection with this proceeding is:

"First: Had Oregon City the authority under the Constitution and laws of the State of Oregon to hold the special election held on the 18th day of December, 1923, for the purpose of electing the three commissioners to hold their office until the next regular state election, as provided for in the charter adopted November 6, 1923?

"Second: Did Oregon City have the authority to elect the three commissioners at any other time than the date at which a general state and county election is held for the purpose of electing officers?

"Third: Did Oregon City have the authority to designate four polling places, one in each voting precinct or ward, as provided in the charter of Oregon City, instead of eleven polling places, one in each voting precinct, as specified by the county court for holding state and county elections?

"It is further stipulated that the proceedings for the calling of special elections and the dividing of the city into four wards, or voting precincts, for general municipal purposes are the same in the charter adopted on November 6, 1923, as in the previous charter of Oregon City.

"It being stipulated that all other acts in connection with the adoption of the charter and the election of the commissioners were legally done.

"It is further stipulated that the defendants shall not be required to set forth in their answer the proceedings in connection with the adoption of the charter and the election of the commissioners of Oregon City, but that this stipulation and the answer herewith filed shall constitute the answer of the defendants."

McBRIDE, C. J.—1. The decision of this question involves a consideration of Section 1a of Article IV

of our Constitution. That portion of said section which bears upon the present controversy is as follows:

"The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation."

Under the provisions of this section cities and towns had unlimited authority to provide the manner and time of holding elections in respect to the adoption of charters or amendments to charters: *State ex rel.* v. *Port of Astoria,* 79 Or. 1, 19 (154 Pac. 399).

2, 3. Subsequent to the foregoing decision Section 14a of Article II of the Constitution was adopted, which reads as follows:

"§ 14a.   Time of Holding Elections in Incorporated Cities and Towns. Incorporated cities and towns shall hold their nominating and *regular elections* for their several elective officers at the same time that the primary and general biennial elections for state and county officers are held, and the election precincts and officers shall be the same for all elections held at the same time. *All provisions of the charters and ordinances of incorporated cities and towns pertaining to the holding of elections shall continue in full force and effect except so far as they relate to the time of holding such elections.* Every officer who, at the time of the adoption of this amendment, is the duly qualified incumbent of an elective office of an incorporated city or town shall hold his office for the term for which he was elected and until his successor is elected and qualified. The legislature, and cities and towns, shall enact such supplementary legislation as may be neces-

sary to carry the provisions of this amendment into effect.''

(We italicize certain portions of the section which we consider relevant to the present decision.)

It will be seen, as shown, that Section 14a of Article II, by its very tenor, authorized the legislature to intervene in city elections only to the extent of prescribing the *time* of holding such elections. Beyond that, and perhaps to the extent of securing orderly and inexpensive procedure, it left cities and towns in the enjoyment of all the privileges guaranteed by Section 1a of Article IV of the Constitution.

The act of 1919 (Chapter 283, General Laws of Oregon for 1919) could rise no higher than its source, and by its title is limited to carrying out the purposes of Section 14a of Article II. That part of the title material here is as follows:

''An act to provide for carrying into effect the provisions of Section 14a of Article II of the Constitution of the State of Oregon relating to incorporated cities and towns holding their nominating and *regular elections* at the same *time* that primary and general elections for state and county officers are held; to regulate the conduct of *such* elections; * * * '' (The italics are the writer's.)

We should not lightly presume that the legislature intended to go beyond the Constitution and regulate the time and manner in which other elections than those regularly recurring should be held. Presuming a constitutional intent, we should rather hold that the provisions of the statute invoked by relator were inapplicable to the case here presented, than in themselves unconstitutional.

A regular election is an election recurring at stated times, fixed by law; while a special election is one

arising from some exigency outside the usual routine. There is nowhere in the Constitution any inhibition against the constituted authority calling such an election and prescribing the time and manner of conducting it. We find nothing in the authorities from this state cited by counsel militating against this doctrine. *Straw* v. *Harris,* 54 Or. 424 (103 Pac. 777), goes only to the extent that the legislature may, by a general law, provide for or permit the organization, by the residents of a particular locality, of a municipal corporation of the character of a port. *West Linn* v. *Tufts,* 75 Or. 304 (146 Pac. 986) only holds, in effect, that an incorporated town cannot legislate extramurally, and legislate so as to deprive the county and the general public of road taxes imposed upon residents of a city for the benefit of the whole public. They do not apply here.

We hold that the election held on December 18, 1923, was in all respects legal, and that the defendants are the duly elected commissioners of Oregon City and are entitled to act as such, and that judgment to that effect should be here entered.

JUDGMENT FOR DEFENDANTS.