**236 P.2d 48**

**STRODE et al. v. SULLIVAN, City Clerk,
City of Phoenix.**

**No. 5592.**

Supreme Court of Arizona.

Oct. 3, 1951.

W. H. Chester, of Phoenix, for petitioners.

Laurence H. Whitlow, City Atty., Jack D. H. Hays, Asst, City Atty., of Phoenix, for respondent.

LA PRADE, Justice.

This is an original proceeding in mandamus commenced by the petitioners, qualified electors of the City of Phoenix, for themselves and in behalf of others similarly situated. The purpose of the proceeding is to compel the respondent, Tom Sullivan, Jr., in his capacity as City Clerk of the City of Phoenix, to accept certain petitions which the petitioners had theretofore attempted to lodge with the city clerk for the purpose of creating a new political party to be called "The Democratic Party of the City of Phoenix", and have such party designated on the official ballots. It is alleged that these petitions were authorized and prepared in conformity with the provisions of chapter 97, Session Laws of Arizona, 1947, entitled:

"An Act Relating To Elections; Providing For The Recognition Of New Political Parties, And Amending Section 55–1006, Arizona Code Of 1939."

This section, as amended, in part reads as follows:

."55–1006. New Political Parties. (a) A political organization which, at the last preceding general election, cast for its candidates for state office, or for any county or *city* office, not less than five per cent of the total votes cast in the state or in such county or city, shall be entitled to representation as a political party on the official ballot for state officers, or of such county or local subdivision. (Emp.sup.)"

"(b) A new political party shall become eligible for recognition and shall be represented by an official party ballot at the next ensuing general primary election and accorded a column on the official ballot at the succeeding general election * * *.

"(c) A new political party shall become eligible for recognition and shall be represented by an official party ballot at the next ensuing primary election of a county or *city* and be placed on the official ballot at the succeeding regular election upon filing with the clerk of the board of supervisors or the city clerk of such county or city a petition signed by a number of qualified electors equal to not less than three per cent of the votes cast for county attorney in the case of a county petition, or for mayor in the case of a city petition. * * * (Emp. sup.)

"(d) Any petition for the recognition of a new political party shall be filed not less than thirty nor more than sixty days prior to the primary election."

The petition for the writ further alleges that their petition for the creation of a new political party in the city of Phoenix contains signatures of a sufficient number of qualified electors; that it is the duty of respondent to examine the signatures and to make certification thereof, and to cause said new political party to be designated and *printed upon the regular ballot* for the ensuing regular primary election to be held in the city of Phoenix in the month of November; and, that the respondent refused and still refuses to accept and file the petition and refused and still refuses to certify the creation of the new political party.

Respondent filed a motion to dismiss the petition for the writ upon the ground that as a matter of law the writ should not issue in that by the provisions of chapter 12 of the Charter of the city of Phoenix relating to elections to be conducted by the city of Phoenix, primary, general or special, "* * * The names of the candidates for each office shall be arranged as provided by law for nothing on the ballot shall be indicative of the source of the candidacy or the support of any candidate." Ch. XII, sec. 9, Charter, City of Phoenix.

Phoenix has a "freeholders'" or "home rule" charter in effect since 1914. Section 2 of article 13 of the state constitution provides that the electors of a city of more than thirty-five hundred population "may frame a charter for its own gov-

ernment consistent with, and subject to, the constitution and the laws of the state"; that when ratified at an election and approved by the Governor such charter "shall become the organic law of such city and supersede any charter then existing (and all amendments thereto), and all ordinances inconsistent with said new charter." Freeholders' charters are not uncommon in this state and this court has on many occasions been called upon to interpret these charters. In the case of Mayor & Common Council of City of Prescott v. Randall, 67 Ariz. 369, 196 P.2d 477, 478, there was under consideration the charter of the city of Prescott. In this case, we made a partial compilation of our cases construing city charters, and there said: "The rule established in all of these cases is that a charter city is sovereign in all of its 'municipal affairs' where the power * * * to be exercised has been specifically or by implication granted in its charter."

It is respondent's position (1) that there is no constitutional or statutory provision in force in this state which commands that officers for cities incorporated under special charters shall be nominated or elected under a party designation notwithstanding that the charter of the city of Phoenix specifically provides that "nothing on the ballot shall be indicative of the source of the candidacy or the support of any candidate." (2) that none of the provisions and amendments thereto of chapter 55, A.C.A.1939, relating generally to elections for state, county and city offices, have any application to the city of Phoenix except insofar as some of the state procedures have been specifically adopted by the charter of the city of Phoenix or ordinances adopted thereunder.

In seeking this writ, it is the theory of petitioners that article 7, section 10 of the Constitution and implementing legislation, Ch. 55, A.C.A.1939, enacted for the purpose of vitalizing the same, clearly show that it was the intention of the framers of the Constitution that the voters in nominating candidates in all elections for state, county and *city* offices shall have the privilege of exercising their choice through a mandatory primary system and through political parties; that in view of the provisions of sections 55–1005, 55–1006 and 55–1024, A.C.A.1939, the matter of nominating candidates for city offices is of such state concern that where there is a conflict between the provisions of the charter of a self-governed city and the statutory law, the former must give way to the latter. If the matter of selecting officers for charter cities can be said to be a subject of state concern, then we think the rule suggested states a correct principle of the law but in our opinion not applicable to the case under consideration. The constitutional provision which it is claimed makes the partisan primary system a matter of state concern, Article 7, section 10, supra, reads as follows: "The legislature shall enact a direct primary election law, which

shall provide for the nomination of candidates for all elective state, county, and city offices, including candidates for United States senator and for representative in congress." The first legislature immediately after statehood and several subsequent legislatures sought to give effect to this constitutional mandate. Several of these acts of the legislature have been called to our attention but in the view we take of the law the case does not turn so much upon the construction to be placed upon the statutory provisions as it does upon the settled construction which this court has placed upon section 2, article 13, Constitution, supra, which, in part, provides that "Any city containing, now or hereafter, a population of more than three thousand five hundred may frame a charter *for its own government* consistent with, and subject to, the constitution and the laws of the state * * * ." (Emp.sup.)

■ This provision conferring upon a qualified city power to frame a charter for its own government is not an enabling act conferring carte blanche authority or plenary power to adopt any legislation that it might desire. There is a restriction that any charter provisions adopted must be "consistent with, and subject to, the constitution and the laws of the state". The Supreme Court of Oklahoma has had occasion to consider and construe this identical constitutional limitation upon the power of charter cities in the matter of framing a charter for their own government.

In the City of Wewoka v. Rodman, 172 Okl. 630, 46 P.2d 334, 335, it is said: "We believe that the charter should be construed in accordance with the well-settled construction of the authorizing provision of the Constitution, remembering that 'subject to,' 'restrained by,' and 'consistent with' in this connection have identical meanings. In the leading case of Lackey v. State [ex rel. Grant] 29 Okl. 255, 116 P. 913, 915, the contention was made that the constitutional requirement that the charter should be 'consistent with and subject to the Constitution and laws of the state' rendered invalid every provision of the charter in conflict with any statute of the state, whether pertaining to the general affairs of the state or to matters purely municipal. This court refused to accept this interpretation, and held that the intention was not to require the charter to conform to every statutory provision, but only to those that were not confined to purely municipal affairs. The principle so announced has never been departed from, and applies with equal force to the interpretation of the Wewoka charter. We conclude that the intent of the charter provision in question was the same as that of the Constitution, to wit, to make the provision in question subject to any provision of the state law, that goes beyond purely municipal affairs. * * * "

We believe that the foregoing interpretation and construction is entirely applicable to our own constitutional provision and in harmony with our own pronounce-

ments. See City of Prescott v. Randall, supra.

▮ Since the early case of Yuma Gas, Light & Water Co. v. City of Yuma, 1919, 20 Ariz. 153, 178 P. 26, down to and including the late cases of City of Tucson v. Tucson Sunshine Climate Club, 1945, 64 Ariz. 1, 164 P.2d 598; Maxwell v. Fleming, 1946, 64 Ariz. 125, 166 P.2d 831; and City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon, 1948, 67 Ariz. 330, 195 P.2d 562, this court has uniformly held that a city charter, when regularly adopted and approved, becomes the organic law of the city and the provisions of the charter supersede all laws of the state in conflict with such charter provisions insofar as such laws relate to purely municipal affairs. In Maxwell v. Fleming, supra, this court had before it the question of the constitutionality of section 15, chapter 12 of the charter of the city of Phoenix. This section provides that any candidate at a city primary election who receives a majority of all votes cast at such election shall be declared elected and that no further election shall be held as to said candidate. The contention was made that this charter provision was in conflict with article 7, section 10 of the Constitution of Arizona, which is the constitutional provision directing the legislature to enact a direct primary law which shall provide for the nomination for all elective state, county and city offices. It is to be noted that the charter made provision for a primary and in addition thereto provided that when a candidate received a majority of the votes at the primary, he was elected. The state statutes did not authorize this declaration of election on receipt of a majority of the votes upon a primary election. With reference to the contention, we said [64 Ariz. 125, 166 P.2d 832]: "We do not think that section 15, supra, is subject to any constitutional inhibitions. Article 7, section 10, of the Constitution of Arizona, provides for a direct primary election law at which all elective state, county and city officers, including candidates for United States senators and for representatives in congress, shall be nominated. The city charter provides for this primary. There is no constitutional provision which would prevent either the state legislature or the city charter from providing that in city primaries the candidate receiving a majority of all the votes cast shall be declared elected. No such provision could be made so far as state, county or other officers are concerned since under another constitutional provision they must be elected at the general election. Article 7, section 11, Constitution of Arizona. This provision does not, of course, apply to city officials. Since the constitution is merely a restriction on what the legislature or the people may provide in a home rule charter, there is no constitutional reason which would vitiate section 15. In the absence of a constitutional or lawful restriction, the legislature has full power to act, and the same is true of the people under a home rule city

charter, within limitations imposed by the constitution and the law."

Some difference of opinion is evidenced in the reported cases as to what activities of a charter city are of local interest or concern and therefore free from legislative interference. See cases cited in Luhrs v. City of Phoenix, 52 Ariz. 438, 83 P.2d 283. This court has had occasion to interpret various charter provisions of several of our cities where the question to be determined was the nature of the charter provision or ordinance enacted thereunder, that is, whether the subject matter was of local concern or statewide interest. The following references are indicative of the court's views on different fact situations.

In Clayton v. State, 1931, 38 Ariz. 135, 297 P. 1037, a city ordinance of the city of Phoenix attempting to regulate traffic on the public streets was held to be invalid and without the jurisdiction of the city in that the state had enacted general legislation regulating traffic upon the public highways. In this case it was pointed out that there were statutory provisions reserving to cities and towns the power over local parking and other special regulations. In Luhrs v. City of Phoenix, supra, it was determined that the matter of pensioning policemen and fixing minimum wages for policemen and firemen were matters of statewide concern and not subject to legislative action by a chartered city. In State v. Jaastad, 43 Ariz. 458, 32 P.2d 799, and City of Phoenix v. Drinkwater, 46 Ariz. 470, 52 P.2d 1175, it was held that minimum wages on public works for manual and mechanical labor done for a city with a freeholders' charter is of statewide concern; other holdings are that taxes and tax liens are of statewide concern and not local or municipal, Home Owners' Loan Corp. v. City of Phoenix, 51 Ariz. 455, 77 P.2d 818; that the city of Yuma, a charter city, could not tax real property of a private car line in view of the requirement of the Constitution, article 13, section 2, that city charters must be consistent with and subject to the Constitution and laws of the state (there were state statutes taxing the same property), Pacific Fruit Express Co. v. City of Yuma, 32 Ariz. 601, 261 P. 49; that the state budget law is a matter of great public concern and applies to home rule cities, American-La France & Foamite Corp. v. City of Phoenix, 47 Ariz. 133, 54 P.2d 258; that the manner and method of disposal of real estate of a city is not a matter of statewide concern, City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon, supra; that a home rule city is not affected by the interdiction of a general statute limiting expenditures for advertising. City of Tucson v. Tucson Sunshine Climate Club, supra.

█ As heretofore pointed out, the question of what election laws apply in the city of Phoenix has received the consideration of this court in the case of Maxwell v. Fleming, supra. The general principles stated therein are applicable in the instant

case although the particular question presented here is a matter of first impression. Municipal elections may be, and usually are, provided for and regulated by the charters of the so-called homerule, freeholder or constitutional charters. See McQuillin, Municipal Corporations 3rd Ed., Vol. 3, p. 52. Municipal elections and the choice of municipal officers have been held to be matters of local concern under charters similar to that of the city of Phoenix. In the case of State ex rel. Short v. Callahan, 1923, 96 Okl. 276, 221 P. 718, 719, there was presented to the court for determination the question of whether the mandatory primary system for the nomination of elective city officers was a matter of such grave concern that it could not be dispensed with and another method adopted by charter cities in nominating and electing purely municipal officers of a self-governing city. Oklahoma's constitution provided for primary elections and was similar to our constitutional provision, article 7, section 10. In addition thereto, it had a constitutional provision practically identical with our constitutional provision, article 13, section 2, authorizing cities with a population of more than thirty-five hundred to "frame a charter for its own government, consistent with and subject to the Constitution and laws of this state * * *". Const.Okl. art. 18, § 3(a). The legislature of Oklahoma, in implementing constitutional provision for a direct primary law, adopted statutory provisions relating generally to elections, and of the tenor found in our chapter 55, A.C.A.1939 relating to elections in the state, counties and cities. The same contention was there made as is being contended for here and as was asserted in our case of Maxwell v. Fleming, supra. In disposing of the contention here made, we quote approvingly from this Oklahoma case wherein it demonstrated the fallacy of petitioners' interpretation of the law:

" * * * We concede that it was the purpose of the framers of the Constitution to extend the primary mandatory system throughout the state, in so far as this could be accomplished without infringing upon or limiting the direct and positive constitutional grant of power to the class of cities mentioned in section 329 (article 18, § 3a), Williams' Constitution, supra, to wit: Cities containing a population of more than 2,000 inhabitants, the Constitution provides, may frame a charter for their own government.

"It has been held that the purpose of this constitutional provision is to emancipate the municipal governments of cities containing a population of more than 2,000 inhabitants from the control formerly exercised over them by the Legislature. And that a city charter adopted pursuant to this provision becomes the written Constitution of the municipality. In re Initiative Petition, City of Okmulgee, 89 Okl. 134, 214 P. 186.

"It being definitely settled, as we have seen, by a long line of decisions, that a city charter when adopted by the people and

approved by the Governor, pursuant to section 329 (article 18, § 3a), Williams' Constitution, becomes the organic law of the city, and that the provisions of the charter supersede all laws of the state in conflict with such charter provisions, in so far as such law relates to purely municipal matters, it cannot be presumed, in view of this provision of the Constitution and the construction placed upon it by the courts, that the framers of the Constitution intended that the direction to the Legislature contained in section 5, art. 3, supra, should infringe upon or limit the specific grant of power to the self-governing cities of the state. There can be no doubt whatever that the right of charter cities to govern themselves, in purely municipal affairs, is (not) a matter of state concern. The right is specifically provided for and safeguarded by the Constitution itself, and we perceive no purpose in any other provision of the Constitution or any constitutional direction to the Legislature to place any limitations whatever upon this right. * * *"

For cases from other jurisdictions holding in effect that city elections in charter or home rule cities are a matter of local interest and concern and governed by charter provisions rather than the general laws of the state, see Curtis v. Tillamook City, 88 Or. 443, 171 P. 574, 172 P. 122; State ex rel. Stone v. Andresen, 110 Or. 1, 222 P. 585; Lail v. People ex rel. Osgood, 75 Colo. 459, 226 P. 300; State ex rel. Hackley v. Edmonds, 1948, 150 Ohio St. 203, 80 N.E. 2d 769; People ex rel. Martin v. Worswick, 142 Cal. 71, 75 P. 663.

The framers of the Constitution, in authorizing a qualified city to frame a charter for its own government, certainly contemplated the need for officers and the necessity of a procedure for their selection. These are essentials which are confronted at the very inception of any undertaking looking toward the preparation of a governmental structure. We can conceive of no essentials more inherently of local interest or concern to the electors of a city than who shall be its governing officers and how they shall be selected.

 Under the premises before us, article 7, section 10 of the Constitution and all implementing legislation must be construed to have reference to elections held in cities incorporated under the general laws of the state and which have not qualified for self government under a charter. We therefore specifically hold that the method and manner of conducting elections in the city of Phoenix is peculiarly the subject of local interest and is not a matter of statewide concern. We further hold that the provisions of the charter of the city relating to elections to be conducted by the city are controlling, that under the charter provision "names of candidates shall be printed on the ballot *with nothing to indicate the source of the candidacy* or of the support of any candidate". Petitioners, in seeking to create a new political party

under the provisions of section 55–1006, supra, are flying in the face of this controlling charter provision when they attempt to have their political party represented on the official ballot and "accorded a column on the official ballot".

The law being what it is, as we have interpreted it, the motion to dismiss is granted and application for the writ is denied.

UDALL, C. J., and STANFORD, PHELPS, and DE CONCINI, JJ., concur.