685 P.2d 115

**Roy B. LAOS, Petitioner,**

**v.**

**The Hon. Jack T. ARNOLD, Judge of the Superior Court; and State of Arizona, ex rel. Robert K. Corbin, Attorney General, Real Party in Interest, Respondents.**

**No. 2 CA–SA 033.**

Court of Appeals of Arizona,
Division 2.

Feb. 27, 1984.

Review Granted May 22, 1984.

Reuben Moses Emanuel and Hecker, Phillips & Hooker by Robert J. Hooker, Tucson, for petitioner.

Robert K. Corbin, Atty. Gen. by Russell A. Kolsrud, Asst. Atty. Gen., Phoenix, for respondents.

## OPINION

BIRDSALL, Chief Judge.

In November 1980 the voters of this state approved the amendment of the state constitution by the addition of Article 22, § 18, which provides:

> "Except during the final year of the term being served, no incumbent of a salaried elective office, whether holding by election or appointment, may offer himself for nomination or election to any salaried local, state or federal office."

On June 24, 1982, petitioner Laos filed nominating papers with the Arizona secretary of state, seeking election to the United States House of Representatives for the Second District of Arizona. On that date, Laos was serving the first year of a four-year term as a member of the Tucson City Council, a salaried elective office.

Two months prior to that date, a declaratory judgment action had been commenced in the United States District Court by Conrad Joyner, a Pima County supervisor who also desired to run for Congress, seeking a judicial determination that the above-quoted amendment violated the qualifications clause of the United States Constitution. On May 24, 1982, the district court granted summary judgment in favor of Joyner. *Joyner v. Mofford,* 539 F.Supp. 1120 (D.Ariz.1982). The judgment was appealed and ultimately reversed by the Ninth Circuit in a decision rendered on May 23, 1983, upholding the constitutionality of Article 22, § 18. *Joyner v. Mofford,* 706 F.2d 1523 (9th Cir.1983). Joyner's petition to the United States Supreme Court for a writ of certiorari was denied on November 28, 1983.

Laos did not resign from his position as councilman prior to initiating the 1982 congressional campaign, which was unsuccessful, and he has remained in that office until the present. On December 13, 1983, two weeks after the Supreme Court's denial of certiorari in the *Joyner* case, *supra,* and over a year and a half after Laos filed his nominating petitions, the respondent attorney general filed a Petition in Quo Warranto seeking to remove Laos as a councilman on the ground that by offering himself for election to Congress, he was disqualified from his office by Article 22, § 18 and was thereafter holding his office unlawfully. Simultaneously, the attorney general filed a Motion for Summary Judgment of Ouster, which was granted on January 23, 1984, giving rise to this special action.

Although the issue of the compatibility of Article 22, § 18 with the United States Constitution has been decided in the federal courts, questions concerning the construction and enforcement of this provision have not previously been presented to the appellate courts of this state. Because this case presents issues of great public importance and of first impression, and because Laos'

remedy by way of appeal is inadequate, we accept jurisdiction.

■ Under A.R.S. § 12–2041, the attorney general is authorized to bring an action in quo warranto "against any person who usurps, intrudes into or unlawfully holds or exercises any public office or any franchise within this state." The purpose of this action is to protect the public interest by preventing one who is not entitled to an office from exercising it. *State of Arizona ex rel. Sullivan v. Moore*, 49 Ariz. 51, 64 P.2d 809 (1937). An action in quo warranto is an appropriate means of determining not only whether a person is eligible to hold an office to which he has been elected or appointed, *State ex rel. Jones v. Lockhart*, 76 Ariz. 390, 265 P.2d 447 (1953), but also whether a person who lawfully entered an office has subsequently become disqualified. *State ex rel. DeConcini v. Sullivan*, 66 Ariz. 348, 188 P.2d 592 (1948). It is into this latter category that the present case falls.

■ The attorney general argues that Article 22, § 18 effectively creates a qualification for public office, that is, an incumbent desiring to run for another office must first resign his position. By not resigning, it is argued, Laos has violated this qualification and is holding office unlawfully, and the attorney general is obligated to seek his removal through quo warranto proceedings. The attorney general relies almost exclusively on the circuit court's decision in *Joyner, supra,* as authority for his conclusions. In its statement of the "facts," that court stated:

> "Under Arizona Revised Statutes §§ 12–2041 and 12–2042, the Arizona Attorney General and County Attorney may bring a *quo warranto* action against a state official who runs for federal office in violation of Article 22, § 18 to force him to resign from the state position and to declare that position to be vacant." 706 F.2d at 1526.

Contrary to the attorney general's contentions, the decision in *Joyner* is not "decisive" on the issue of the appropriateness of quo warranto as a remedy for violations of the constitutional provision. The sole issue before the court was the constitutionality of Article 22, § 18 and any language in the opinion pertaining to the appropriate means of enforcing the provision was therefore mere dicta. It further appears that this language resulted from the agreement of the parties to the action, reflected in the district court's opinion, that Joyner was faced with the possibility of an action by the state to force him to resign or to declare his office vacant. 529 F.Supp. at 1121. Even assuming that this issue had been decided in *Joyner*, we are not bound by the construction placed upon our constitution and statutes by a federal court. As our supreme court has recently stated, "... the concept of federalism assumes the power, and duty, of independence in interpreting our own organic law. With all deference, therefore, we cannot and should not follow federal precedent blindly." *Pool v. Superior Court*, 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984).

■ The first issue we must address is whether Article 22, § 18 is applicable to officers of a chartered city. Laos argues that since the City of Tucson has been given the constitutional right to "home rule" by adopting a charter pursuant to Article 13, § 2 of the constitution, the provisions of the charter supersede any general laws relating to municipalities. He further argues that the qualifications of elected officials of chartered cities are matters of purely local concern, relying on the supreme court's decision in *Strode v. Sullivan*, 72 Ariz. 360, 236 P.2d 48 (1951).

In *Strode*, the petitioners challenged the refusal of the city clerk of Phoenix to certify the creation of a new political party and to designate the identity of the party on the ballot for a primary election in the city, in compliance with the state's general election laws. These laws were adopted pursuant to Article 7, § 10 of the constitution, which provides:

> "The Legislature shall enact a direct primary election law, which shall provide for the nomination of candidates for all elective State, county, and city offices,

including candidates for United States Senator and for Representative in Congress."

While the Phoenix charter included a provision for primary elections, in contrast to the state law, it expressly prohibited any indication on the ballot "of the source of the candidacy or the support of any candidate." Ch. XII, sec. 9, Charter, City of Phoenix. In holding that the charter provisions were controlling, the court stated: "We can conceive of no essentials more inherently of local interest or concern to the electors of a city than who shall be its governing officers and how they shall be selected." 72 Ariz. at 368, 236 P.2d 48. However, the *Strode* court was not faced with an alleged conflict between different sections of the constitution, or between a charter and the constitution, but rather a conflict between the city charter and a state statute. The court specifically noted that the charter provision was consistent, as it must be, with the constitution. 72 Ariz. at 365, 236 P.2d 48.

*Strode*, therefore, does not provide authority for the proposition that, merely by adopting a charter pursuant to Article 13 of the constitution, a city is thereby taken outside the ambit of any other *constitutional* provisions pertaining to elected officials. The fact that Tucson, as a chartered city, has been granted certain governmental powers over local matters, does not mean that those powers are exclusive. To the contrary, Article 13, § 2 specifically requires that a city charter be "consistent with, and subject to, the Constitution ...." Further, there is nothing in the language of Article 22, § 18 which would suggest that it was not intended to apply to officials of chartered cities. Both its language and its position in the "Schedule and Miscellaneous" portion of the constitution indicate that it was intended to apply generally to all salaried elected officials in the state.

■ Laos also argues that the due process and equal protection clauses of the state and federal constitutions are violated if Article 22, § 18 is construed to apply to officials of chartered cities, on the ground that as applied to such officials the provision has no rational connection to a valid state interest. This argument has no merit. It cannot be seriously contended that the people of this state have no legitimate interest in determining the qualifications of their elected officials and their tenure in office, nor the authority to provide for such matters in their constitution. That they have chosen to delegate this authority to some degree to the electors of chartered cities, with regard to their elected officials, does not strip them of the authority to establish other criteria applicable to all elected officials within the state. Contrary to Laos' contentions, concerns for due process and equal protection would arise if we were to construe this provision as not applying to officials of chartered cities. The plain language of the amendment compels the conclusion that Article 22, § 18 applies to all salaried elected officials, including those of chartered cities.

Having determined that Article 22, § 18 applies to petitioner, there is no question that he violated its provisions by "offer[ing] himself for nomination or election to [a] salaried ... federal office" while he was an "incumbent of a salaried elective office." While this provision proscribes such conduct, it does not by its terms cause the continued holding or exercising of Laos' prior elective office to be unlawful. Indeed, the amendment is curiously silent as to the consequences of the prohibited conduct or the remedies for its violation. In this respect, it stands in stark contrast to other provisions of our constitution and statutes pertaining to disqualification for public office. Article 6, § 28, for example, provides:

"Justices and judges of courts of record shall not be eligible for any other public office or for any other public employment during their term of office, except that they may assume another judicial office, and upon qualifying therefor, the office formerly held shall become vacant .... *Any justice or judge who files nomination papers for an elective office*, other than for judge of the superi-

or court or a court of record inferior to the superior court in a county having a population of less than one hundred fifty thousand persons according to the United States census, *forfeits his judicial office.*" (emphasis added)

Similarly, Article 6, § 34 provides that any judicial officer who absents himself from the state for more than sixty days "shall be deemed to have forfeited his office." Pursuant to Article 6.1, which, like Article 22, § 18, was proposed by the legislature, any judge against whom a felony indictment or information is pending is "disqualified from acting as a judge" and upon final conviction, "the supreme court shall remove him from office." Article 6.1, §§ 2 and 3. Section 6 further provides: "The provisions of this article shall be self-executing." With regard to state legislators, Article 4, part 2 of the constitution provides:

"Section 4. No person holding any public office of profit or trust under the authority of the United States, or of this State, shall be a member of the Legislature; Provided, that appointments in the State militia and the offices of notary public, justice of the peace, United States commissioner, and postmaster of the fourth class, shall not work disqualification for membership within the meaning of this section.

Section 5. No member of the Legislature, during the term for which he shall have been elected or appointed shall be eligible to hold any other office or be otherwise employed by the State of Arizona or, any county or incorporated city or town thereof. This prohibition shall not extend to the office of school trustee, nor to employment as a teacher or instructor in the public school system."

In the exercise of its duty under Article 22, § 21 to "enact all necessary laws to carry into effect the provisions of this Constitution," the legislature has adopted, among other statutes, A.R.S. § 38–296, which provides:

"A. *No incumbent of an elective office,* whether holding by election or appointment, *shall be eligible for nomina-*

*tion or election to any office other than the office so held, nor shall the nomination papers of such incumbent be accepted for filing.*

B. The resignation of the incumbent elective officer duly filed in writing with the officer, board or commission having jurisdiction of the office shall, if not accepted within ten days, be deemed to have become effective as of the date of filing.

C. This section shall not be construed to prohibit a person whose resignation from office has become effective from qualifying as a candidate for another office during the unexpired portion of the term affected by the resignation, nor shall it apply to any incumbent elective officer who seeks re-election to the same office or to any other public office during the final year of the term to which he has been so elected.

D. *A person violating any provision of this section is guilty of misfeasance in office and the office held by such person shall be declared vacant.*" (emphasis added)

It is thus apparent that the legislature is fully capable of expressly establishing the consequences of violating constitutional provisions relating to qualifications for office and tenure when it chooses to do so. In the case of Article 22, § 18 it has not done so. Both the attorney general and the circuit court in *Joyner, supra,* repeatedly characterize this provision as a "resign-to-run" law, and it may well be true that it was the desire of the people of Arizona in adopting the amendment that incumbents seeking another office first resign from their present elected positions. The difficulty is that in neither the amendment nor in any implementing legislation has this desire been affirmatively expressed.

At first blush it would appear that A.R.S. § 38–296 would serve to fill the gap by prohibiting an incumbent from being eligible for nomination to another office and by declaring that any incumbent violating the statute "is guilty of misfeasance in office

and the office held by such person shall be declared vacant." If this statute could be construed as implementing the provisions of Article 22, § 18 and as applying to officials of chartered cities, it would arguably have the effect of setting forth the consequences of violating that provision, i.e., the incumbent would be guilty of misfeasance and his office declared vacant. By continuing to hold his office in spite of these provisions, Laos would in effect be usurping or holding the office unlawfully, and the attorney general would have the basis for a quo warranto action.

We are precluded from looking to A.R.S. § 38–296 as appropriate implementing legislation, however, as a result of the supreme court's decision in *State ex rel. Pickrell v. Senner,* 92 Ariz. 243, 375 P.2d 728 (1962), where it was held that this section could not be applied to candidates for federal office without violating the qualifications clause of the United States Constitution. Indeed, this statute was noted in the *Joyner* opinion as precisely the kind of statute which offends the qualification clause because it bars a potential candidate from running for federal office, as opposed to merely regulating the conduct of state officeholders. *Joyner v. Mofford,* 706 F.2d at 1528–1529. Further, the penal provision of subsection (D) of this section is limited by its terms to violations "of this section." Inasmuch as this statute was enacted many years prior to the adoption of Article 22, § 18, and given this instructive language, it cannot be construed as implementing the provisions of Article 22, § 18 with respect to incumbents seeking federal office.

Having found no other arguably pertinent legislation, and having been cited to none by the attorney general, we are thus left with a constitutional prohibition, for the violation of which there is no express remedy. The attorney general conceded as much in an opinion rendered at the request of the secretary of state on January 4, 1982. In the course of responding to her questions concerning the proper interpretation of Article 22, § 18, the attorney general stated:

"... since the provision does not indicate what the penalty is for its violation, we think the Legislature also should establish this.[6] In so doing, the Legislature may provide that the incumbent will lose his or her office, become ineligible to assume the office for which he or she is campaigning, suffer some other penalty, or subject himself or herself to all of the foregoing.

\*  \*  \*  \*  \*  \*

[6] An argument may be made that the provision is self-executing, that is, enforceable without any implementing legislation, based on the impeachment provisions found in Ariz. Const., Art. 8, Pt. 2, §§ 1 and 2, and A.R.S. §§ 38–611 *et seq.* However, there is no indication that a violation of Article 22, § 18 constitutes malfeasance for purposes of these provisions. Thus, it is not clear whether any remedy for a violation exists." Op.Atty.Gen., I82–001 (R81–134) (January 4, 1982).

In the absence of any remedial provision in Article 22, § 18 or any implementing legislation, we are compelled to conclude that quo warranto is not available as a remedy for a violation of this provision by an incumbent seeking federal office. The right to become a candidate for public office is a fundamental right which cannot be curtailed without good cause. *Kautenburger v. Jackson,* 85 Ariz. 128, 333 P.2d 293 (1958). As the supreme court stated in *McCarthy v. State of Arizona,* 55 Ariz. 328, 101 P.2d 449 (1940):

"We are not unmindful that statutes imposing qualifications upon the right to hold office should receive a liberal construction as it impairs the right of the people to select officers of their own choosing. Furthermore, disqualifications provided by the legislature are construed strictly and will not be extended to cases not clearly within their scope, and the rule is also that there is a presumption in favor of the eligibility of one who has been elected or appointed to public office." 55 Ariz. at 334–335, 101 P.2d 449.

*See also Shirley v. Superior Court,* 109 Ariz. 510, 513 P.2d 939 (1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472

**56**

(1974). An action in quo warranto proceeds on the theory that an office has been forfeited as a result of misconduct by the official. *State ex rel. McKittrick v. Wymore*, 343 Mo. 98, 119 S.W.2d 941 (1938). However, misconduct by an official does not automatically and by itself result in a forfeiture of his office. *See, e.g.*, A.R.S. § 11–223 (misconduct by county supervisor penalized by forfeiture of $500). Forfeiture follows an act only as a result of some positive rule of law declaring that such an act shall result in a forfeiture. *Turner v. Wilburn*, 206 Ga. 149, 56 S.E.2d 285 (1949); *Burkholder v. People*, 59 Colo. 99, 147 P. 347 (1915). Where an act is prohibited by a law which fails to specify the consequences, we are powerless to invade the legislative field and supply the penalty. *Davis v. Industrial Commission*, 88 Ariz. 117, 353 P.2d 627 (1960). It would have been a relatively easy task for the legislature to have specified the penalty for violating Article 22, § 18. We cannot assume, however, that the penalty would have been a forfeiture of office. Cf. A.R.S. § 11–223.

■ Inasmuch as Article 22, § 18 does not set forth any consequences to the violator, let alone provide that a forfeiture of office will result, and in the absence of any implementing legislation, we are compelled to hold that petitioner is not usurping or unlawfully holding or exercising his office as a Tucson city councilman by having offered himself as a candidate for federal office. Accordingly, no basis exists for an action in quo warranto against him. We are not presented with the issue of what other remedies, if any, might have been available to the attorney general and we therefore do not address this question.

The order of the respondent court granting the Motion for Summary Judgment of Ouster is vacated and the trial court is ordered to enter judgment in favor of the petitioner Laos.

HATHAWAY and HOWARD, JJ., concur.